**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM C. PLOUFFE, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| | : | |
| **BAYVIEW LOAN SERVICING, LLC,** | : | **NO. 15-5699** |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                    **October 31, 2016**

## I.      INTRODUCTION

This is a case about one man's dispute with certain banks, and employees of those banks, regarding how they handled his home mortgage. The *pro se* plaintiff, William C. Plouffe, Jr., filed this action against defendants Bayview Loan Servicing, LLC, M & T Bank, Hakim Collins, Mei-Ly Jean Pierre, and various John Does. Altogether, Plouffe brings a total of thirty-three (33) claims. He seeks relief pursuant to various federal statutes: the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA), Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 *et seq.*, and Regulation X (RESPA), Emergency Economic Stabilization Act of 2008, 12 U.S.C. § 5201 *et seq.* (EESA), American Recovery and Reinvestment Act of 2009 (ARRA), Home Affordable Modification Program (HAMP), and Home Affordable Refinance Program (HARP).

Plouffe also seeks relief under Pennsylvania law for fraud, breach of contract, breach of the duty of good faith and fair dealing, and violations of public policy.

For the following reasons, I will grant in part and deny in part Defendants' motion to dismiss. I will deny the motion with respect to Plouffe's claims under the FDCPA and RESPA, including the claims against the individual defendants. I will grant the motion as to all other claims.

## II.   BACKGROUND[1]

Plouffe lives in a house located in Kutztown, Pennsylvania. (Am. Compl. ¶ 12). Plouffe has lived in this house since 2008, and he has a mortgage. (Id.) The mortgage is "covered under Fannie Mae and federally related under 12 C.F.R. § 1024.5." (Id.)[2] Plouffe's mortgage was first held by the entities Mortgage America and JP Morgan Chase. (Id. ¶ 13). At some point during the time the mortgage was held by these two entities, Plouffe defaulted on the mortgage. (Id. ¶ 14). He then obtained a HEMAP Loan Modification through Pennsylvania. (Id.)[3]

After Plouffe obtained the HEMAP loan modification, he defaulted again. (Id. ¶ 14). After this second default, Plouffe's mortgage was purchased by or transferred to defendant M & T Bank. (Id.) After the mortgage was transferred to M & T, Plouffe

---

[1] Because this is a motion to dismiss for failure to state a claim, I will "accept all [plaintiff's] factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." Bruni v. City of Pittsburgh, 824 F.3d 353, 360 (3d Cir. 2016). However, my acceptance of all allegations as true does not apply to "legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[2] This federal regulation, 12 C.F.R. § 1024.5, is part of a host of regulations known collectively as Regulation X. Regulation X was promulgated under RESPA in 2014. Wilson v. Bank of Am., 48 F. Supp. 3d 787, 799 (E.D. Pa. 2014). The purpose of Regulation X is to provide implementing regulations for guidance in interpreting and enforcing RESPA. 12 C.F.R. § 1024.1.

[3] HEMAP stands for Pennsylvania's Homeowner's Emergency Mortgage Assistance Program. Coyne v. Pa. Housing Fin. Agency, 826 A.2d 925, 926 (Pa. Commw. Ct. 2003).

defaulted for a third time on the mortgage. (Id. ¶ 16). After this third default, Plouffe

entered into negotiations, with Defendants M & T and Bayview, seeking another loan

modification. (Id. ¶ 16). This second loan modification was through the federal Home

Affordable Modification Program ("HAMP"). (Id.) HAMP was created by Congress

pursuant to the Emergency Economic Stabilization Act of 2008. (Id. ¶ 16 n.2).

Bayview initiated the negotiations with Plouffe regarding this HAMP loan

modification. (Id. ¶ 21). The individual defendants in this case, Hakim Collins and Mei-

Ly Jean Pierre, are both employees of Bayview. (Id. ¶ 20). In Plouffe's discussions with

Bayview, Bayview "repeatedly stated that they were a debt collector for the purposes of

the FDCPA." (Id. ¶ 21). Following these discussions with Bayview, Plouffe was accepted

into the HAMP program, after which he completed a three-month trial period by August

2014. (Id. ¶ 23).

After being "accepted" into the HAMP program, Plouffe again defaulted on his

mortgage (this being the fourth time). (Id. ¶ 24). At that time, Plouffe was "waiting for a

court ruling on his [Social Security] disability appeal." (Id.). After his fourth default,

Plouffe corresponded with Bayview, M & T, and a law firm, for a one-year period,

through letters and via the telephone. This one-year period is the focal point of this case.

### A.    *The First Letter and Plouffe's Act 91 Application*

On October 16, 2014, the law firm of Mattlement, Wientroh, and Miller sent

Plouffe a letter. (Id. ¶ 25). In this letter, the firm indicated that they were going to pursue

foreclosure proceedings against Plouffe due to his default on his mortgage. (Id.) Five

days later, on October 21, 2014, Plouffe received a letter from Bayview. (Id. ¶ 26). The

letter from Bayview was an "Act 91" letter and contained a "Program Application." (Id.)[4] Plouffe completed this application and submitted it. (Id. ¶ 27). During this time, Plouffe spoke with defendant Hakeem Collins, a Bayview employee, who stated that Bayview "was a debt collector and that there would be no legal foreclosure proceedings started/continued against him as long as there was a pending application for the Program by Plouffe." (Id. ¶ 28).

After Plouffe submitted his application, Bayview sent him a letter. (Id. ¶ 29). In this letter, Bayview stated—contrary to its previous position—that the foreclosure proceedings against Plouffe would continue to be pursued. (Id.) The letter went on to list several defects in Plouffe's Act 91 application: (1) date on the form; (2) no food stamp award letter; (3) no food stamp receipts; (4) hardship letter; and (5) unemployment award. (Id.) This letter had no deadline. (Id.)

### B.   Plouffe's Follow-Up Communications Regarding the Act 91 Application

After receiving this letter from Bayview, Plouffe called Bayview and spoke to Collins on the telephone. (Id. ¶ 31). Plouffe told Collins that the Pennsylvania Department of Public Welfare did not issue food stamp receipts, but he told Collins he would send a document indicating he had received food stamps. (Id.) Collins told Plouffe that this document would not be sufficient. (Id.) Bayview also refused to change their position regarding pursuit of foreclosure proceedings against Plouffe. (Id. ¶ 32) During

---

[4] This Act 91 letter is a letter that is required to be sent to Pennsylvania residents facing foreclosure. See Act 91 Notice, http://www.phfa.org/forms/hemap/AppendixA.pdf (last visited Oct. 18, 2016). Act 91 was codified at 41 P.S. § 401, which requires mortgage lenders to provide residential mortgage debtors (such as Plouffe) disclosures required by the Truth in Lending Act and RESPA. 41 P.S. § 401. The Act 91 letter provides homeowners with the option to apply for state-funded assistance through Pennsylvania's Homeowner's Emergency Mortgage Assistance Program ("HEMAP") within thirty-three (33) days of receipt of the letter.

this time, Plouffe requested a forbearance until his Social Security petition was resolved, but this request was not processed by Bayview. (Id. ¶¶ 33–34).

### C.     December 2014 Letter and Communications

Following the above communications, Plouffe received another letter from Bayview. (Id. ¶ 35). In this letter, Bayview represented that the value of Plouffe's home was $125,000. (Id.) On December 30, 2014, Plouffe received yet another letter from Bayview. (Id. ¶ 36). This letter listed other "defects" with Plouffe's Act 91 application, some of which were not listed in the previous letter: (1) lack of a homeowners insurance policy; (2) lack of food stamp receipts; and (3) lack of a 2013 income tax return. (Id.) Although this letter was dated December 30, 2014, it listed a deadline for submission of these documents as one day earlier: December 29, 2014. (Id. ¶¶ 36–37).

After receiving this letter, Plouffe called Bayview and spoke to Collins again. (Id. ¶ 39). He sent Bayview his 2013 income tax return and again told them that the Pennsylvania Department of Public Welfare did not provide food stamp receipts. (Id.) Collins told Plouffe that Bayview and M & T would pay for his homeowners insurance policy, but that Plouffe would need to obtain one first. (Id.) Plouffe responded by stating he was disabled and could not obtain the policy. (Id.) Nonetheless, Plouffe was able to obtain the insurance policy after which he sent the bill for it to Bayview. (Id. ¶ 41).

### D.     Early 2015 Letters and Communications

In January 2015, Plouffe sent Bayview a letter from the Pennsylvania Department of Public Welfare, confirming that Plouffe received food stamps. Plouffe resent the insurance information to Bayview. Bayview never responded to these submissions.

However, a few weeks later, on February 10, 2015, Plouffe received a letter from Bayview. This letter offered Plouffe the option of a "short sale in lieu of deed." (Id. ¶ 45).[5] Plouffe did not respond to this offer in any way.

Plouffe then sent several letters to Bayview, asking for the name of a supervisor and raising issues he had with them. (Id. ¶¶ 47–48).  On February 18, 2015, Bayview sent another letter offering a "deed-in-lieu of transaction" for up to $10,000. (Id. ¶ 49). Plouffe did not respond to this offer in any way. Shortly after the offer, Bayview indicated in a letter that they were unable to contact Plouffe by phone and they would not respond to his letters. (Id. ¶ 50). This letter also included another application packet for Plouffe to complete. (Id.) Around this same time, Plouffe's homeowners insurance policy was cancelled. (Id. ¶ 51). After this, Bayview and Collins "arranged for the Bank own [sic] forced insurance program." (Id.)

On March 4, 2015, Bayview sent Plouffe a letter "representing a repayment schedule." (Id. ¶ 53). A few days prior, Plouffe had sent a letter to Bayview in which he asked why they never responded and requested details on the deed-in-lieu and the amount being offered. (Id. ¶ 52). After some time, Plouffe wrote a letter asking why Bayview was "ignoring his letters and requests for information and his request for a forbearance." (Id. ¶ 54).

---

[5] Both a short sale and a deed in lieu of foreclosure are remedies between a defaulting homeowner and the lender. Vassalotti v. Wells Fargo Bank, N.A., 815 F. Supp. 2d 856, 859 n.5 (E.D. Pa. 2011). A short sale occurs when the borrower sells the property for under market value, the net proceeds go to the lender, and the lender must accept this amount as satisfaction of the debt. See Mitchell H. Kider et al., *Other Making Home Affordable Programs—Home Affordable Foreclosure Alternatives (HAFA)*, REAL ESTATE & MORTG. BANKING § 7:98 (2015). A deed-in-lieu of foreclosure occurs when the borrower simply transfers ownership of the property to the borrower in satisfaction of the debt. Id.

### E.    The Foreclosure Proceedings

In the Spring of 2015, "Plouffe was served with a foreclosure civil action by the Berks County Sheriffs." (Id. ¶ 55). In April and May of 2015, Bayview sent Plouffe letters advising him of another loan modification program. (Id. ¶ 56). Plouffe responded to these letters, but Bayview did not follow up with him. (Id.) After foreclosure proceedings began, Plouffe submitted another loan modification application and received another offer of a deed-in-lieu from Bayview. (Id. ¶¶ 56–58). Plouffe expressed his interest in the deed-in-lieu, but Bayview did not respond to that or to Plouffe's application. (Id.) In the letters discussed above, "it was repeatedly stated that Bayview was a debt collector for purposes of the FDCPA." (Id. ¶ 61).

On October 22, 2015, defendant Jean Pierre (an employee of Bayview) sent Plouffe a letter. (Id. ¶ 62). The letter included a proposed affidavit for Plouffe to sign. (Id.) This affidavit stated that there had been a mistake in Plouffe's prior loan modification agreement: Bayview—not M & T—was the actual "lender" of Plouffe's mortgage. (Id.) The loan modification agreement had listed M & T—not Bayview—as the actual lender. (Id.) This letter also stated that Bayview was "acting as the agent" for M & T. (Id.) The letter was dated October 8, 2015, but it was not sent until October 22, 2015—two days after Plouffe commenced this action in federal court. (Id. ¶ 64).[6]

Plouffe wrote to Bayview several times, seeking clarification regarding the ownership of his mortgage (i.e., whether M & T or Bayview was the actual owner). (Id. ¶

---

[6] Plouffe contends the letter was "backdated" to October 8, 2015 to make it appear as if it was sent before he commenced this action on October 20, 2015. (Am. Compl. ¶ 67).

68). Plouffe never received any response to these inquiries. (Id.) In November 2015, in conjunction with the foreclosure proceedings, the Berks County Court of Common Pleas held a hearing regarding Plouffe's application for loan modification and forbearance. (Id. ¶ 69). At this hearing, M & T and Bayview admitted Plouffe's application was under consideration. (Id.) As of yet, neither Bayview nor M & T has responded to this pending application. (Id.) Throughout all these communications, Bayview "apparently would only speak with Plouffe by telephone and would refuse permission for Plouffe to record the telephone calls." (Id. ¶ 70). Plouffe told Bayview and Collins that he had limited telephone service because of financial troubles. (Id.)

## III.   LEGAL STANDARD

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Subsequently, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, while "Rule 8 marks a notable and generous departure from the hyper-

8

technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

The basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." <u>Pinkerton v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## IV.   DISCUSSION

All defendants have filed a joint motion to dismiss Plouffe's amended complaint in its entirety for failure to state a claim under Rule 12(b)(6). Having considered the amended complaint and the parties' briefs, I find that Plouffe's amended complaint states claims under the FDCPA and RESPA. I will therefore deny the Defendants' motion to dismiss these claims, but I will grant the motion in all other respects.

### A.    *FDCPA Claims*

Plouffe's amended complaint asserts ten claims under three different provisions of the FDCPA.[7] Plouffe argues Defendants violated the FDCPA by: (1) pursuing foreclosure despite stating they would not do so while his loan modification application was pending; (2) stating invalid due dates and deadlines for submission of various application materials; (3) demanding documents that did not exist; (4) falsely stating the value of Plouffe's house; (5) requiring Plouffe to obtain homeowners insurance; (5) refusing to process Plouffe's request for forbearance; (6) refusing to communicate with Plouffe; (7) requiring completion of the same application more than once; (8) misrepresenting the status of M & T and Bayview; and (9) attempting to persuade Plouffe to release Defendants from liability by acquiescing in the changed terms of his loan modification agreement.

---

[7] Plouffe brings claims for: (1) "false or misleading representations" under 15 U.S.C. § 1692e; (2) "unfair practices" under 15 U.S.C. § 1692f; and (3) "harassment or abuse" under 15 U.S.C. § 1692d.

Defendants move to dismiss Plouffe's FDCPA claims, arguing that they are not "debt collectors" under the FDCPA. In the alternative, they argue Plouffe's allegations do not amount to any violation of the FDCPA. For the reasons outlined below, I disagree.

### 1.    Defendants' "Debt Collector" Status

The provisions of the FDCPA only apply to "debt collectors." Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000). On the contrary, "creditors" are not subject to the FDCPA. Id. A "creditor" is a person or entity who collects debts on its own behalf. Id.; 15 U.S.C. § 1692a(4). A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Plouffe's amended complaint contains sufficient information to conclude that Defendants are debt collectors under the FDCPA. The amended complaint alleges Bayview repeatedly represented that it was a debt collector for purposes of the FDCPA. Plouffe has also produced letters sent from Bayview to Plouffe indicating that Bayview is acting on behalf of M & T Bank to collect a debt. (Doc. No. 25 at 9–14). Defendants rely on case law holding that mortgage lenders and servicers are not considered debt collectors under the FDCPA. Although this is sometimes the case, it is far from an absolute truth. To be sure, a lender or servicer will be considered a debt collector if the mortgage at issue was already in default at the time the servicer or lender began servicing the loan. E.g., Pollice, 225 F.3d at 403 ("[A]n assignee of an obligation is not a 'debt

11

collector' if the obligation is not in default at the time of the assignment; conversely, an

assignee may be deemed a 'debt collector' if the obligation is already in default when it is

assigned"); Conklin v. Purcell, Krug & Haller, Civ. Action No. 1:05–CV–1726, 2007 WL

404047, at *5 (M.D. Pa. Feb. 1, 2007) (noting same); Owens v. JP Morgan Chase Bank,

Civ. Action No. 12–1081, 2013 WL 2033149, at *3 (W.D. Pa. May 14, 2013) (same).

That is the case here. Plouffe's amended complaint clearly alleges that Bayview began

servicing his mortgage at a time when Plouffe was already in default on that mortgage.

(Am. Compl. ¶¶ 13–16). It also states that Defendants continuously misrepresented

whether M & T or Bayview serviced the mortgage. (Id. ¶¶ 62–64). Therefore, Plouffe has

sufficiently alleged that Defendants are debt collectors for purposes of the FDCPA.

### 2.   Defendants Engaged in Prohibited Debt Collection Activity

Defendants contend the amended complaint does not allege any facts indicating

that they "engaged in any prohibited practices in an attempt to collect a debt." (Doc. No.

18 at 13). Specifically, Defendants rely on the absence, in Plouffe's complaint, of any

instance in which they "demanded payment." (Id. at 14). Because the communications

between Plouffe and Defendants were in regards to Plouffe's payment plan and loss

mitigation procedures, Defendants believe that this activity does not constitute any

violation of the FDCPA.

Contrary to Defendants' position, the Third Circuit recently held that "a

communication need not contain an explicit demand for payment to constitute debt

collection activity. . . . Indeed, communications that include discussions of the status of

payment, offers of alternatives to default, and requests for financial information may be

part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity." McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240, 245–46 (3d Cir. 2014); see also Simon v. FIA Card Servs., 732 F.3d 259, 266–67 (3d Cir. 2013) (holding that letters proposing foreclosure alternatives were actionable because there is no requirement that one demand payment but only that the communication convey information about a debt); Potoczny v. Aurora Loan Servs., LLC, 33 F. Supp. 3d 554, 563 n.15 (E.D. Pa. 2014) (rejecting FDCPA defendant's argument that its letters to plaintiff "suggesting alternatives to foreclosure, including settlement" did not amount to debt collection activity under the FDCPA).

Plouffe's amended complaint plausibly sets forth various violations of the FDCPA. It also sufficiently alleges Defendants are debt collectors. Therefore, I will deny Defendants' motion to dismiss Plouffe's FDCPA claims.[8]

### B.    RESPA Claims

Plouffe brings multiple claims under RESPA based on Defendants' alleged failure "to timely respond to Plouffe's repeated requests for information." (Am. Compl. ¶ 90).

RESPA was enacted to "protect home buyers from material nondisclosures in settlement statements and abusive practices in the settlement process, both in the actual settlement process and in the 'servicing' of a federally related mortgage loan." Gehman

---

[8] According to Plouffe's amended complaint, Bayview and M & T misrepresented who "owned" the mortgage versus who "serviced" the mortgage. (Am. Compl. ¶¶ 62–64). As Plouffe correctly points out, whether Bayview or M & T qualifies as a debt collector under the FDCPA turns on which of them was the servicer of Plouffe's mortgage. See 15 U.S.C. § 1692a(6) (defining "debt collector" as one who attempts to collect a debt on behalf of "*another*") (emphasis added). Because Plouffe's FDCPA claims rest upon an assertion that the "lender" status of M & T and Bayview has been muddied and misrepresented, I will not dismiss M & T as a defendant at this stage. Surely, discovery will provide clarity on this issue, but right now I must "accept all [plaintiff's] factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." Bruni, 824 F.3d at 360.

v. Agent Mtg. Co., LLC, 726 F. Supp. 2d 533, 540 (E.D. Pa. 2010). Under RESPA,

borrowers may make a "qualified written request" to a mortgage loan servicer. 12 U.S.C.

§ 2605(e)(1)(A). A qualified written request is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> > (i)     includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> >
> > (ii)    includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). If the borrower makes a qualified written request, the servicer

must respond in writing within thirty days. Id. § 2605(e)(2). Failure to do so constitutes a

violation of RESPA.

Defendants argue that Plouffe's RESPA claims must be dismissed because he has

failed to plausibly allege that he sent any qualified written requests. Defendants maintain

that the letters Plouffe wrote were not specific and contained insufficient detail. A plain

reading of the amended complaint reveals that Defendants are incorrect. The amended

complaint clearly alleges that Plouffe sent a myriad of written letters, requesting specific

information, that were never responded to. For example, after receiving a letter from

Defendants about the value of his house, Plouffe wrote back, disputing the valuation of

the home and asking for more information on the house's value. (Am. Compl. ¶ 35).

Defendants did not respond. (Id.) Later, Plouffe wrote another letter. In this letter, he sent

Defendants various documents seeking clarification regarding his homeowners insurance,

food stamps information, and deadlines that Defendants had imposed. (Id. ¶¶ 43–44). Defendants never responded to this letter. (Id.) At a later date, Plouffe wrote several more letters to Bayview repeating the issues he had with them and specifically "asked for the name of a supervisor." (Id. ¶¶ 47–48). Defendants never responded. (Id.) Plouffe wrote another letter asking Bayview why they had been ignoring his request for a forbearance. (Id. ¶ 54). Defendants did not respond. (Id.) Finally, Plouffe wrote a letter seeking clarification as to who—Bayview or M & T—had purchased his mortgage. (Id. ¶ 68). Defendants did not respond to this letter either. (Id.)

These blatant failures to respond to Plouffe's written requests are the exact type of conduct that RESPA was aimed at remedying. Gehman, 726 F. Supp. 2d at 540. The letters amount to "qualified written requests" under the statute because they were "written" by Plouffe and "provide[d] sufficient detail to the servicer regarding . . . information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). For all these reasons, I will deny Defendants' motion to dismiss Plouffe's RESPA claims.[9]

### C. EESA, HAMP, ARRA and HARP Claims

Plouffe's amended complaint alleges several causes of action against the Defendants pursuant to EESA, HAMP, ARRA and HARP. However, all of Plouffe's claims under EESA, HAMP, ARRA, and HARP fail as a matter of law because none of these statutes provides a private right of action. See Miller v. Chase Home Fin., LLC, 677 F.3d 1113, 1116 (11th Cir. 2012) (recognizing that there is no private right of action

---

[9] Obviously, discovery may reveal that the allegations set forth in Plouffe's amended complaint are not in fact true. However, at the pleadings stage of this litigation, I must accept Plouffe's factual allegations as true. These allegations, if true, would support RESPA liability.

under EESA); Gudzelak v. PNC Bank, Civ. No. 12–1230–LPS, 2013 WL 3949526, at *2 (D. Del. July 29, 2013) (noting the same); Jordan v. Chase Manhattan Bank, 91 F. Supp. 3d 491, 501–02 (S.D.N.Y. 2015) (same); Sinclair v. City Mtg., Inc., 519 F. App'x 737, 738–39 (3d Cir. 2013) (recognizing there is no private right of action under HAMP); Wilson v. Bank of America, 48 F. Supp. 3d 787, 809 (E.D. Pa. 2014) (noting the same); Benlian v. PECO Energy Corp., Civ. Action No. 15–2128, 2016 WL 3951664, at *11 n.15 (E.D. Pa. July 20, 2016) (recognizing that there is no private right of action under ARRA); In re Residential Capital, LLC, Case No. 12–12020 (MG), 2014 WL 5358762, at *9 (S.D.N.Y. Oct. 20, 2014) (recognizing there is no private right of action under HARP); Keosseian v. Bank of America, No. CIV. A.11-3478, 2012 WL 458470, at *2 (D.N.J. Feb. 10, 2012) ("Indeed, there is nothing express or implied in HAMP or its enabling legislation [EESA/ARRA] that creates a private right of action, and courts in this District and across the country have universally rejected claims such Plaintiffs' on that basis."); Hoover v. Wells Fargo Bank, No. CIV. A. 2014 WL 820197, at *2 (W.D. Pa. Mar. 3, 2014) ("The rub is that the federal courts have uniformly held that HAMP and its attendant regulatory edicts do not create a private right of action which would support a federal claim by an individual plaintiff."). Accordingly, I will dismiss Plouffe's claims under HAMP, HARP, ARRA, and EESA.

### D.   Fraud Claims

Plouffe's amended complaint alleges that Bayview and Collins are liable for fraud under Pennsylvania law. As the factual basis for these claims, Mr. Plouffe cites: (1) the

misrepresentations concerning the continuation of foreclosure proceedings against him;
(2) the improper communication of due dates for the submission of documents; and (3)
the improper communication of the status of Bayview and M&T Bank as either lender or
servicer.  (Am. Compl. ¶¶ 112–15). The Defendants argue that Mr. Plouffe has failed to
plead his fraud claims with the requisite specificity required by the heightened pleading
standard of Federal Rule of Civil Procedure 9.  In particular, the Defendants note the lack
of specific allegations demonstrating that Mr. Plouffe relied on any of their alleged
misrepresentations.

Federal Rule of Civil Procedure 9 requires a party alleging fraud or mistake to
"state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P.
9.  To meet this heightened standard, "the plaintiff must plead or allege the date, time and
place of the alleged fraud or otherwise inject precision or some measure of substantiation
into a fraud allegation."  Frederico v. Home Depot, 507 F.3d 188, 199 (3d Cir. 2007).
Under Pennsylvania law, Mr. Plouffe must allege with particularity the following
elements in order to successfully establish a claim for common law fraud:

(1) A representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether
it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and

(6) the resulting injury was proximately caused by the reliance.

Youndt v. First Nat'l Bank of Port Allegany, 868 A.2d 539, 545 (Pa. Super. Ct. 2005).

Even viewing the facts in a light most favorable to Mr. Plouffe, I find that he has failed to meet the heightened pleading requirements demanded by Rule 9(b). Specifically, Mr. Plouffe's amended complaint is devoid of any factual allegations demonstrating that Mr. Plouffe relied on the Defendants' alleged misrepresentations. Mr. Plouffe does not allege that he took any actions or engaged in any conduct as a result of the alleged misrepresentations. Consequently, his allegations concerning the harm that he suffered as a result of these misrepresentations are vague and conclusory. Mr. Plouffe alleges that Defendants' misrepresentation that foreclosure proceedings would be halted while his application was pending "resulted in harm to Plouffe by denying him the benefit of the statement upon which Plouffe relied." (Am. Compl. ¶ 112). This characterization of the harm that he suffered as a result of the Defendants' misrepresentation is cryptic at best. For the remainder of his fraud claims, Mr. Plouffe simply states that the Defendants' misrepresentations "resulted in harm to Plouffe." (Id. at 114–15). This conclusory statement of the harm is not stated with sufficient particularity to meet the heightened standards of Rule 9(b). Without demonstrating that he relied on the Defendants' misrepresentations and that that reliance resulted in specific harm, Mr. Plouffe's fraud claims must be dismissed.


### E.   Breach of Contract Claims

Plouffe's amended complaint also alleges breach of contract claims against the Defendants. Plouffe states that the Defendants breached their contractual duties to Mr.

18

Plouffe by:  (1) initiating and continuing foreclosure proceedings against Mr. Plouffe during the pendency of his application for loan modification or forbearance; (2) attempting to alter the previous loan modification with Mr. Plouffe; and (3) failing to comply with the terms of the Service Participation Agreement ("SPA") between Bayview and Fannie Mae.  The Defendants dispute the existence of an enforceable contract between themselves and Mr. Plouffe.

In order to plead a cause of action for breach of contract, Pennsylvania law requires that a plaintiff demonstrate:  "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."  Jones v. Select Portfolio Serv., Inc., No. CIV. A.08-972, 2008 WL 1820935, *5 (E.D. Pa. Apr. 22, 2008) ("So long as the plaintiff pleads all the requisite elements, a count for breach of contract can stand.").  A valid and binding contract is formed when "the parties have manifested an intent to be bound, the terms are sufficiently definite, and there is consideration."  MDNet, Inc. v. Pharmacia Corp., 147 F. App'x 239, 243 (3d Cir. 2005).

Mr. Plouffe's first breach of contract claim alleges that "[t]he Defendants, Bayview and Collins, by their intentional acts of breaking their agreement not to initiate/continue a foreclosure action against Plouffe during the pendency of his application for loan modification/forbearance, constituted a breach of contract with Plouffe ."  (Am. Compl. ¶ 116).  Plouffe explains that a valid and binding contract was formed when, during a telephone call, a Bayview employee told Mr. Plouffe that no legal foreclosure proceedings would proceed against him as long as there was a pending

application for HAMP.  (Id. at ¶ 28).  The Defendants argue that Mr. Plouffe cannot

establish a valid contract based upon his vague reference to an oral statement which

Bayview made to him.  They point out that Mr. Plouffe has failed to allege any facts

establishing the terms of the contract or the consideration which Mr. Plouffe exchanged

for the promise to halt foreclosure proceedings, or even how Mr. Plouffe is entitled to

enforce such a contract.  I agree with the Defendants that this breach of contract claim is

fatally threadbare.  In order to state a plausible claim for breach of contract, Mr. Plouffe

is required to allege more than the existence of an alleged contract.  Mr. Plouffe must

allege the essential terms of the contract, the contractual duties imposed on the

Defendants by the contract, and the damages that he suffered as a result of the

Defendants' breach—none of which he has done here.  Mr. Plouffe may not proceed

based only upon a conclusory statement that the Defendants were contractually bound not

to continue foreclosure proceedings against him while his HAMP application was

pending.

Mr. Plouffe alleges a second breach of contract claim stating that "[t]he

Defendants, Bayview and Jean Peirre, by their intentional acts of attempting to alter the

previous loan modification with Plouffe as to the status of the Bank and Bayview as

either or both lender/servicer, constituted a breach of contract with Plouffe. " (Id. at ¶

117).  In other words, Mr. Plouffe alleges that the Defendants breached their contractual

duties under the July 25, 2014 Loan Modification Agreement ("LMA") by indicating in

correspondence to Mr. Plouffe that Bayview and not M&T Bank, as previously indicated

in the LMA, was the lender for Plouffe's mortgage.  Certainly, the LMA may impose

specific contractual duties upon the Defendants; however, Mr. Plouffe has failed to provide the essential terms of the LMA and therefore, I am unable to determine whether the Defendants breached their contractual duties under the LMA by incorrectly designating M&T Bank as the lender for Mr. Plouffe's mortgage.  Additionally, Mr. Plouffe has failed to identify damages that he suffered as a result of the Defendants' breach.  Plouffe is required not only to identify specific damages he suffered but also to plead facts demonstrating a causal connection between his damages and the Defendants' breach.  See Bd. of Trustees, Roofers Local No. 30 Combined Welfare Fund v. Internat'l Fidelity Ins. Co., 63 F. Supp. 3d 459, 471 (E.D. Pa. 2014) ("[A] plaintiff must show a causal connection between the breach and the loss.").

Plouffe's final breach of contract claim states that Bayview violated the terms and specifications as set forth in the servicing agreement governing his mortgage between Bayview and Fannie Mae.  (Am. Compl. ¶ 118).  Mr. Plouffe claims that as a holder of a Fannie Mae mortgage, he is a third-party beneficiary of the Servicer Participation Agreement ("SPA") between Bayview and Fannie Mae. (Id. at 17).  Courts generally reject breach of contract claims pursued by homeowners alleging that they are third-party beneficiaries of servicers' SPAs.  See Shaffery v. Bank of America, N.A., No. CIV. A. 2015 WL 1189622, at *1 (D.N.J. Mar. 16, 2015) ("An SPA does not provide a vehicle for creating a cause of action under HAMP:  the HAMP Guidelines, effectuated through the servicer's execution of an SPA, may not be enforced by a mortgagee under a third-party beneficiary theory."); In re Newell, No. CIV. A. 2012 WL 909200, at *2 (S.D. Fl. Mar. 15, 2012) ("The vast majority of courts to examine this issue have held that a homeowner

is not an intended third-party beneficiary of the servicer participation between his or her

servicer and the government and does not have the right to enforce the agreement against

the servicer."); Geesey v. CitiMortgage, Inc., 135 F. Supp. 3d 332, 340–41 (W.D. Pa.

2015) (stating that courts generally reject breach of contract of contract claims brought by

homeowners trying to enforce an SPA because homeowners are merely incidental—

rather than intended—beneficiaries of the SPAs); Escobedo v. Countrywide Home Loans,

Inc., No. CIV. A. 2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009) ("Qualified

borrowers are incidental beneficiaries of the [SPA] and do not have enforceable rights

under the contract.").  Accordingly, Mr. Plouffe may not bring a breach of contract action

against the Defendants predicated on the SPA because Mr. Plouffe is a homeowner and

thus, merely an incidental beneficiary of the SPA without rights of enforcement.

For all the foregoing reasons, I will dismiss Plouffe's breach of contract claims.[10]

## F.    *Public Policy*

Part of Mr. Plouffe's amended complaint alleges that:

---

[10] Plouffe makes conclusory references to the duty of good faith and fair dealing in his amended complaint. Without more, these allegations do not support a claim for breach of this duty. In addition, because I have found that Plouffe fails to plead the requirements of a breach of contract claim, it therefore follows that there can be no breach of the implied covenant of good faith and fair dealing. See In re 400 Walnut Assocs., L.P., 454 B.R. 60, 72–73 (E.D. Pa. 2011) ("In Pennsylvania, there is no free-standing claim for breach of good faith. Rather, [i]n order to plead a cause of action for breach of the covenant of good faith, whether it is an express or implied covenant, a plaintiff must properly plead the elements of a claim of breach of contract.") (alteration in original); Shaffery, 2015 WL 1189622, at *2 ("Because there is no contract under which Plaintiffs can sue Defendants, Plaintiffs cannot maintain a claim for a breach of the implied covenant of good faith and fair dealing."); Geesey, 135 F. Supp. 3d at 346 ("The law in Pennsylvania is clear that there can be no claim for breach of good faith and fair dealing when there is no contract to which such obligation attaches."). Even if Mr. Plouffe had been able to establish the existence of a contract based on either the oral statement made by a Bayview employee, the LMA, or the SPA, Mr. Plouffe could not allege that the same conduct that formed the basis for his breach of contract claims also formed the basis for his good faith claim. Simmons v. Nationwide Mut. Fire Ins. Co., 788 F. Supp. 2d 404, 409 (W.D. Pa. 2011) ("However, Pennsylvania law does not recognize a separate breach of contractual duty of good faith and fair dealing where said claim is subsumed by a separately pled breach of contract claim."). Accordingly, to the extent Plouffe has pled a claim for breach of the implied covenant of good faith and fair dealing, I will dismiss this claim.

> The Defendants, by their multiple violations of violations of [sic] 41 P.S. 401, Regulation X, and the Real Estate Settlement Procedures Act (12 C.F.R. 1024 et seq.), and the Emergency Economic Stabilization Act of 2008 (Making Homes Affordable Act) and the American Recovery and Reinvestment Act of 2009 and the Home Affordable Refinance Program and all of their progeny (hereinafter the "Program") with the associated Fannie Mae HAMP Guidelines violated the public policy of the state of Pennsylvania and the United States of America, as expressed in its legislative and regulatory laws.

(Am. Compl. ¶ 119). This claim does not set forth any cognizable cause of action and therefore this claim is dismissed.

### G.    *Individual Liability Under the FDCPA and RESPA*

Defendants contend that I should dismiss the individual defendants (Collins and Jean Pierre) from this case. In doing so, they argue the amended complaint does not cite to any conduct Collins or Jean Pierre committed in their "individual capacities." (Doc. No. 18 at 10). Defendants cite to no legal authority for this proposition. It appears, by using the "individual capacity" language, Defendants are attempting to use principles applicable only to civil rights cases under 42 U.S.C. § 1983.

In the context of debt collection, however, "employees of a debt collecting agency may be jointly and severally liable with the agency" for claims under the FDCPA. Albanese v. Portnoff Law Assocs., Ltd., 301 F. Supp. 2d 389, 400 (E.D. Pa. 2004). Plouffe's amended complaint alleges various actions that Collins and Jean Pierre took in connection with Plouffe's FDCPA claims. The same goes for the conduct these individual defendants took that forms the basis of Plouffe's RESPA claims. Indeed, these

are the individuals who Plouffe alleges failed to respond to him and misrepresented information to him. For all these reasons, I will deny Defendants' motion to dismiss the remaining claims against the individual defendants Collins and Jean Pierre.

## H.    Leave to Amend

The United States Court of Appeals for the Third Circuit has made clear that if a complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit a curative amendment unless such an amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Dismissal without leave to amend is justified only on grounds of bad faith, undue delay, prejudice, and futility. Id. at 236. This opportunity to amend must be offered, even if, as in this case, the plaintiff does not specifically make such a request. Id. at 235.

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotations omitted). Nonetheless, "[t]o survive a motion to dismiss, a complaint—*even a* pro se *complaint*—'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Maxberry v. Sallie Mae Educ. Loans, 532 F. App'x 73, 75 (3d Cir. 2013) (emphasis added) (quoting Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 570)).

In this case, granting Plouffe leave to amend his EESA, ARRA, HARP, HAMP, contract, fraud, and public policy claims would be futile. Defendants filed an initial motion to dismiss before the instant motion to dismiss currently before me. In their first

motion to dismiss, Defendants moved for dismissal on the same grounds upon which they presently move for dismissal. Plouffe then amended his complaint, but that amendment was unable to cure the deficiencies warranting dismissal of these claims. It is important to point out that, unlike most *pro* se plaintiffs, Mr. Plouffe is an attorney.[11] He has used his legal skills to file multiple lawsuits on his own behalf and to represent clients in complex cases, at both the trial and appellate level, in state and federal courts. See, e.g., Plouffe v. Ligon, No. 4:08CV1778JMM, 2008 WL 5101942 (E.D. Ark. Dec. 1, 2008) (Plouffe as plaintiff); Plouffe v. Cevallos, Civ. Action No. 10–1502, 2012 WL 1994785 (E.D. Pa. June 1, 2012) (Plouffe as plaintiff); Spurlock v. Ashley Cnty., 281 F. App'x 628 (8th Cir. 2008) (Plouffe as lawyer); Plouffe v. Gambone, Civ. Action No. 11–6390, 2012 WL 2343381 (E.D. Pa. June 20, 2012) (Plouffe as plaintiff); Honeycutt v. Foster, 334 F. App'x 48 (8th Cir. 2009) (Plouffe as lawyer); Gilbert v. Moore, 216 S.W.3d 583 (Ark. 2005) (Plouffe as lawyer). This is relevant to the issue of leave to amend. Kerlinsky v. Main Line Hosps., Inc., Civ. Action No. 10–4404, 2013 WL 3811476, at *2 (E.D. Pa. July 22, 2013) (Stengel, J.) ("[Plaintiff]'s training as an attorney was an impediment to his being afforded the leniency typically given to *pro se* litigants, and thus, the tardiness of his motion would not be excused."); Cartlett v. N.J. State Police, Civil No. 12–153, 2013 WL 3949022, at *3 (D.N.J. July 31, 2013) ("Where the plaintiff is also a lawyer, however, the plaintiff's ability to understand the Court's directives and to bring her pleadings into compliance with those orders will be presumed and required."). For all the

---

[11] It is unclear whether or not Plouffe is still licensed to practice law.

above reasons, in the exercise of discretion, I will not grant Plouffe leave to amend since it is clear that doing so would be futile.

## V.      CONCLUSION

Viewing all the well-plead factual allegations as true, Plouffe's amended complaint plausibly sets forth claims under the FDCPA and RESPA. Therefore, I will deny Defendants' motion to dismiss Plouffe's FDCPA and RESPA claims. In the same vein, I will deny Defendants' motion to dismiss the individual defendants, Collins and Jean Pierre, for liability under FDCPA and RESPA. Plouffe's other claims fail as a matter of law and because they are insufficiently pled. Accordingly, I will grant Defendants' motion to dismiss with respect to all other claims.