## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM C. PLOUFFE, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **BAYVIEW LOAN SERVICING, LLC,** | : | |
| **et al.,** | : | **NO. 15-5699** |
| | : | |
| **Defendants.** | : | |

## M E M O R A N D U M

**STENGEL, C.J.**                                                         **June 13, 2018**

William C. Plouffe, a former attorney representing himself in this matter, claims that after he defaulted on his mortgage, his mortgage providers mishandled his requests for modification in violation of federal law. The defendants in this case are Bayview Loan Servicing, LLC; M & T Bank; and two individual Bayview employees.

Mr. Plouffe's remaining claims[1] fall under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*, and RESPA's corresponding regulations (Regulation X). The defendants' motion for summary judgment is currently before me. For the following reasons, I will grant the defendants' motion in its entirety.

## I.      BACKGROUND[2]

William C. Plouffe, Jr. owns his residence at 215 Highland Avenue in Kutztown, Pennsylvania. (Doc. No. 16 ¶ 12.) On December 3, 2007, he entered a mortgage

---

[1] On October 31, 2016, I granted in part the defendants' motion to dismiss. (Doc. No. 27.)

agreement with Mortgage America, Inc. for $137, 750. (Ex. A, at Ex. "B".)

### A.  Mr. Plouffe's First Default

On August 4, 2010, the collections department of Chase Home Finance LLC sent

Mr. Plouffe a default notice, listing $2,581.04 in past due payments. (Ex. C.) In order to

resolve the default, the plaintiff obtained a Pennsylvania Housing Finance Agency

(PHFA) Homeowner's Emergency Mortgage Assistance Program (HEMAP) mortgage on

March 8, 2011 for $49,500. (Ex. D.)

### B.  Mr. Plouffe's Second Default

Unfortunately, the HEMAP mortgage did not prevent Mr. Plouffe from defaulting

again. (Doc. No. 16 ¶ 15; Doc. No. 55 ¶ 7.) Mr. Plouffe then applied for additional help

from the PHFA but was denied on November 13, 2013. (Ex. G.) He next turned to M & T

Bank, and on July 15, 2014, entered a loan modification agreement, which required

monthly payments of $630.10. (Ex. A, at Ex. "E".) But again, Mr. Plouffe failed to keep

up with his payments.

### C.  Mr. Plouffe's Third Default

M & T Bank sent Mr. Plouffe an "Act 91 notice," dated October 1, 2014, stating

that his mortgage was in default and that the lender intended to foreclose on his home.

(Ex. A, at Ex. "F".) On October 6, 2014, Bayview sent Mr. Plouffe a letter identifying

itself as an "agent for your servicer, M&T Bank" and providing alternative options to

---

[2] The facts in this section are compiled from the exhibits appended to the defendants' motion for
summary judgment (Doc. No. 55), except where otherwise noted. The plaintiff also cited to these
exhibits in his response to the defendants' motion for summary judgment. (Doc. No. 57.)

foreclosure, such as forbearance and mortgage modification.[3,4] (Ex. J.) In his amended complaint, Mr. Plouffe states that he "sought the advice of housing counselors and submitted his application," presumably for a mortgage modification, but he provides no further evidence or explanation of how he did so at that time. (Doc. No. 16 ¶ 27.)

Mr. Plouffe claims that "[d]uring this time period" he had "several telephone calls" with Mr. Hakeem Collins (a Bayview asset manager and one of the two individual defendants in this case), and that Mr. Collins assured him "there would be no legal foreclosure proceedings started/continued against him as long as there was a pending application for the Program by Plouffe." (Id. ¶ 28.) Mr. Plouffe has not provided any evidence or further explanation to support the existence of such statements by Mr. Collins.[5] And Mr. Collins makes no such assurances in any of the nine recordings of calls provided by the defendants.[6] (Ex. AW.)

In a letter dated December 16, 2014, Bayview responded to a "loan workout package" submitted by Mr. Plouffe (presumably the one referenced above, from paragraphs 27–28 of Mr. Plouffe's amended complaint). (Ex. K.) This letter stated:

---

[3] This letter, and almost all correspondence on the record from Bayview to Mr. Plouffe, was signed by Hakeem Collins, a Bayview asset manager and an individual defendant in this case.
[4] Mr. Plouffe states in his amended complaint that on October 21, 2014 he also received "an Act 91 letter and Program Application from Bayview." (Doc. No. 16 ¶ 26.) It is unclear whether he is referring to the October 6, 2014 letter at Exhibit J or some other communication.
[5] Mr. Collins restates this allegation from his complaint in his own sworn affidavit, which he attaches as Exhibit A to his objections to the defendants' statement of material facts. (Doc. No. 57, Ex. A ¶ 3.)
[6] I do not assume that the audio files provided by the defendants encompass all calls between the plaintiff and Bayview. I merely note that the audio files that are part of the record do not support Mr. Plouffe's claim.

Within 30 days of receipt of all the required documentation, we endeavor to provide you with a written decision regarding your eligibility for one of our assistance programs.

. . .

*If your loan is delinquent, collection/foreclosure activity currently in progress will continue to proceed during the review process of your request for a workout.* This letter and the loan workout review process shall not waive any of our rights or your obligations under the note and other loan documents. In other words, you are responsible to continue making your loan payments.

(Id. (emphasis added).)

A second December 16, 2014 letter from Bayview noted that Mr. Plouffe's "loan workout request" was missing four documents, which were required for review of the application. (Id.) These documents were:

(1) "Missing 'Date Hardship Began' on page 3 of Freddie Mac Form 710, Uninformed Borrower Assistance Form"
(2) "Missing Food Stamp award letter and 2 months proof of receipt and/or 2 most recent bank statement [sic] which shows income"
(3) "Missing Hardship Letter (please explain why you fell behind on your Mortgage signed & dated)"
(4) "Unemployment Award Letter and 2 months proof of receipt and/or 2 most recent bank statement [sic] which shows income (If Applicable)"

(Id.)

This letter repeated: "If your loan is delinquent, collection/foreclosure activity currently in progress will continue to proceed during the review process of your request for a workout." (Id.) Several paragraphs later, it stated: "*After we receive all required documentation*, we will process your request as quickly as possible. While we consider your request, your home will not be referred to foreclosure."[7] (Id. (emphasis added).)

---

[7] This language could be the origin of Mr. Plouffe's belief that foreclosure activities would be paused when he submitted his application even if the application was incomplete. However, in

This second December 16, 2014 letter did the following: It made it clear that Bayview would not review Mr. Plouffe's application without the missing information; it set a deadline of January 15, 2015 for completion of the application; and it provided a fax number and address to which Mr. Collins could send the requested documentation. (Id.)

In response, on December 22, 2014, Mr. Plouffe faxed his hardship letter (which contained the date his hardship began), his notice of financial eligibility for unemployment compensation, and a letter stating that he had been approved for food stamps. (Ex. L.)

Then, in a letter dated December 30, 2014, Bayview requested three further documents by January 29, 2015.[8] (Ex. M.) This second request reiterated a previous request for food stamp documentation; the other two items were new:

> (1) "Borrower to provide homeowner's insurance invoice reflecting bill to lender or paid in full due to currently expired [sic]. Insurance quote is not acceptable"
> (2) "Borrower to provide two months proof of receipt for food stamp income."
> (3) "Borrower to provide 2013 Tax Return 2013 [sic]. If not filled [sic] then AM to pull tax transcript to check non-filing status."

(Ex. M.)

---

these December 16, 2014 letters, Bayview makes it clear that collection and foreclosure actions will proceed unless and until a complete application is under review.

[8] In his amended complaint, Mr. Plouffe incorrectly states that this December 30, 2014 letter listed a deadline of December 29, 2014 for the requested documentation. (Doc. No. 16 ¶ 37.) A plain reading of Bayview's letter reveals that January 29, 2015 is the deadline Bayview provided. Mr. Plouffe acknowledges his error in his objections to the defendants' statement of undisputed material facts. (Doc. No. 57 ¶ 20.)

On January 2, 2015, Bayview sent Mr. Plouffe a third request, this time asking for the following documents by February 1, 2015 (with requests 1, 3, and 4 almost identical to previous requests):

(1) "Borrower to provide homeowner's insurance invoice reflecting bill to lender or paid in full due to currently expired. Insurance quote is not acceptable"
(2) "Investor requires for lender placed insurance to be remove [sic] on file and borrower to obtain homeowner insurance. Please provide a copy of Homeowner Insurance Declaration Page. If borrower do not have [sic] homeowner insurance, BLS/M&T Bank will pay for insurance premium. Provide insurance company direct billing information:
'M&T BANK
ISAO P.O. Box 5738
Springfield, OH 45501'"
(3) "Borrower to provide 2 months proof of receipt and/or 2 most recent bank statement which shows food stamp income."
(4) "Borrower to provide 2013 Tax Return with all scheduled and attachments [sic]. If not filled [sic] then AM to pull tax transcript to check non-filing status."

(Ex. O.)

Mr. Plouffe responded with a faxed a letter, dated January 29, 2015, stating that his insurance company had already sent the requested information; also stating that he received a form, not a receipt, from the Department of Public Welfare when he "requested a receipt" for his foodstamps; and asking why Bayview had not acknowledged previously receiving his proof of foodstamp benefits. (Ex. AU.) Mr. Plouffe attached the following to this faxed letter: two "insurance estimates," one "certificate of insurance," and the food stamp form, which reflected $193 in monthly benefits. (Id.) In his response to the defendants' motion for summary judgment, Mr. Plouffe reiterates his belief that he had "corrected all of the errors except for the Foodstamp Receipts," and as for the

receipts, he said he "discussed the matter on the telephone with Bayview and Collins, explaining that the Pennsylvania Department of Public Welfare did not issue such receipts and arranged for the forwarding of a document . . . that indicated that foodstamps had been issued to Plouffe" (presumably the document attached to his January 29, 2015 letter). (Doc. No. 57 ¶ 17.)

After the February 1, 2015 deadline had passed, Bayview sent Mr. Plouffe a letter, dated February 6, 2015, stating that he was no longer eligible for a mortgage modification because he had failed to supply necessary documentation.[9] (Ex. P.) This letter did not specify what information remained missing. (Id.)

### D. *Mr. Plouffe Requests Information from Bayview Regarding his Mortgage*

Mr. Plouffe responded to Bayview's February 6, 2015 letter denying his application for modification with a letter dated February 12, 2015. (Ex. Q.) He stated: "You never explained how the documentation I sent was not sufficient. You never addressed the issue of a forebearance [sic] which we talked about and which you said could not be evaluated until after the eligibility for a loan adjustment had been denied." (Id.) In this letter, Mr. Plouffe explicitly requested "the standards of Freddie Mac which you say I failed to meet, as I previously qualified for this type of help from you and M&T Bank and my circumstances have not changed," as well as the name and contact of both Mr. Collins's supervisor and "the appropriate person at M&T Bank for the service of

---

[9] The February 6, 2015 letter also provided Mr. Plouffe with information regarding two potential alternatives to avoid foreclosure: a short sale or a deed-in-lieu of foreclosure. (Ex. P.)

legal process for your acts on their behalf." (Id.) Mr. Plouffe sent an additional letter dated February 20, 2018 requesting essentially the same information. (Ex. R.)

On February 18, 2015, Bayview sent Mr. Plouffe a letter with information about a "deed-in-lieu" offer, asking him to call Mr. Collins at Bayview for further information. (Ex. S.) Two days later, Bayview again wrote to explain that Mr. Collins had repeatedly tried to reach Mr. Plouffe by phone but was unable to do so. (Ex. T.) This February 20, 2015 letter explained that it was "important" for Mr. Plouffe to contact Mr. Collins "immediately" to discuss possible options if he still could not afford his mortgage payments.[10] (Id.) A separate letter from Bayview, also dated February 20, informed Mr. Plouffe that there may be options available to him and that he needed "to take action by completing and returning the entire Borrower Response Package by March 22, 2015" if he was interested. (Ex. U.)

Mr. Plouffe sent Bayview a letter, dated March 1, 2015. (Ex. V.) It stated that he received "the packet," presumably the Borrower Response Package, and it included several requests for information, including the following:[11]

- "[Bayview's correspondence] included another application packet. Does this mean that you are going to start the application process over again? If so, you already

---

[10] In his objections to the defendants' statement of material facts, Mr. Plouffe states that he "did not have telephone service at various times after December and Collins had refused Plouffe [sic] demands not to record the telephone calls." (Doc. No. 57 ¶ 28.)

[11] In this letter, Mr. Plouffe states that Bayview sent "the packet" on February 23, 2015. However, Bayview's letter was dated February 20, 2015. Presumably, February 23 is either when Mr. Plouffe received the correspondence, or it was a mistake, and Mr. Plouffe is referring to the Borrower Response Package. (Ex. V.)

have all of the documentation, which has not changed, unless you want more. Do specify."

- "Also, in this packet your [sic] state that there will be no hold on foreclosure while the application is being processed. This contradicts what you previously stated. Does this mean this re-application process is merely pro forma?"

- "You did not acknowledge the receipt of the documentations I sent to you. You never explained how the documentation I sent was not sufficient. You never addressed the issue of a forebearance [sic] which we talked about and which you said could not be evaluated until after the eligibility for a loan adjustment had been denied."

- "Do provide me with the standards for Freddie Mac which you say I failed to meet, as I previously qualified for this type of help from you and M&T Bank and my circumstances have not changed."

- "Also, provide me with the name and contact information for your supervisor. . . . and the name and contact information of the appropriate person at M&T Bank for the service of legal process for your acts on their behalf."

(Id.)

On March 4, 2015, Bayview sent Mr. Plouffe a "Loan Reinstatement schedule," which itemized the amount he had failed to pay, totaling $8,509.12. (Ex. W.) In a letter dated March 9, 2015, Mr. Plouffe reiterated many of the same requests in his March 1, 2015 letter. (Ex. Y.) There is no evidence that he received a response to his requests, and the defendants do not claim to have responded.

On March 13, 2015, a foreclosure action was initiated against Mr. Plouffe in Berks County Civil Court. (Ex. Z.)

On April 16, 2015, Bayview sent Mr. Plouffe two letters, both similar to prior correspondences. One stated again that after repeated attempts, Mr. Collins was unable to reach Mr. Plouffe by phone to discuss potential foreclosure alternatives. (Ex. AA.) The other listed and described alternatives, including forbearance plans, modification, pre-foreclosure sale, and deed-in-lieu of foreclosure. (Ex. AD.)

Then, on April 20, 2015, Bayview sent Mr. Plouffe a letter providing him with his property valuation report. (Ex. AE.) It stated that the valuation report[12] "was developed as part of your request for mortgage assistance" and that Bayview may use the valuation data when deciding Mr. Plouffe's eligibility for "an assistance option." (Id.) Mr. Plouffe disputed the valuation in a letter dated December 24, 2014.[13] (Ex. AV.)

On April 30, 2015, Mr. Plouffe submitted another letter to Bayview. (Ex. AG.) The purpose of this letter is unclear from the exhibit provided to the court, but in Mr. Plouffe's objections to the defendants' statement of undisputed material facts, he states that this letter "completed the application." (Doc. No. 57 ¶ 30.) The "application" appears to be the Borrower Response Package, due March 22, 2015, described in the February 20, 2015 letter from Bayview. (See Ex. U.) Therefore, it appears from the record that Mr.

---

[12] The valuation report was not attached to the exhibit provided to the court. However, it is not material to my decision.
[13] This date on Mr. Plouffe's letter is likely a mistake because it predates the valuation from Bayview.

Plouffe submitted his application materials over a month after Bayview's deadline. (See Exs. AG, U.)

This April 30, 2015 letter from Mr. Plouffe to Bayview reflects that Mr. Plouffe was aided in its preparation by Deborah Strunk, a housing counselor at the Berks Community Action Program Budget Counseling Center. (Ex. AG.) In the letter, Ms. Strunk stated that Mr. Plouffe's only income at that time was $194 per month in food stamps, though he had a pending application for Social Security Disability benefits.[14] (Id.) Meanwhile, the letter stated, his monthly expenses totaled $2,334.00, leaving a monthly deficit of $2,140.00. (Id.) As noted above, this letter and its attached materials (whether they constituted a complete application or not), were submitted over a month after the March 22, 2015 deadline for the Borrower Response Package. (See Exs. AG, U.)

Starting in May 2015, Bayview sent a series of additional letters. On May 11, 2015, Bayview sent Mr. Plouffe another "Loan Reinstatement schedule," which stated that he owed $15,197.75 as of that date. (Ex. AF.) On June 17, 2015, Bayview sent Mr. Plouffe another letter stating that Mr. Collins had repeatedly tried to contact him by phone but could not—and encouraging Mr. Plouffe to contact Bayview. (Ex. AH.) On August 10, 2015, Bayview sent another letter stating that it had tried to contact Mr. Plouffe and listing options to avoid foreclosure. (Ex. AI.) The options included a "Trial Period Plan," which would require Mr. Plouffe to pay $959.68 per month for three

---

[14] In his objections to the defendants' statement of undisputed material facts, Mr. Plouffe states that he "has recently been awarded total and permanent disability benefits from the Social Security Administration." (Doc. No. 57 ¶ 1.) He neither provides proof of this nor indicates whether it impacted his ability to pay his mortgage.

months, and which would allow him to pursue loan modification options. (Id.) The letter

noted that Mr. Plouffe must call Bayview by August 24, 2015 to participate—and that if

he did not respond by then, foreclosure actions would continue.[15] (Id.)

In his own affidavit, attached as Exhibit A to his objections to the defendants'

statement of material facts, Mr. Plouffe states that he did not respond to the "offer of a

trial modification"[16] because he "needed a forbearance and not a an [sic] immediate

modification payment plan and the matter was being discussed in the state court

Diversion Program." (Doc. No. 57, Ex. A ¶ 18.)

The defendants state that on August 23, 2015, the day before the August 24

deadline for the "Trial Period Plan," the plaintiff "resubmitted an essentially identical and

incomplete loss mitigation application." (Doc. No. 55 ¶ 51; Ex. AM.) The exhibit

provided to the court, Exhibit AM, is merely a collection of documents without anything

officially deeming them an "application." In his objections to the defendants' statement

of material facts, Mr. Plouffe states that the defendants "failed to include the full

application" and again failed "to show how it was incomplete."[17] (Doc. No. 57 ¶ 51.)

---

[15] In his objections to the defendants' statement of undisputed material facts, Mr. Plouffe adds the following: "[T]his offer was discussed in the Diversion Program in the state court [foreclosure] proceeding and . . . additional issues were under consideration, which included the failure of the Defendants to respond to Plouffe's completed Application that was still pending." (Doc. No. 57 ¶ 45–47.)

[16] Mr. Plouffe states that this offer was made on August 15, 2015, but presumably he is referring to the August 10, 2015 letter from Bayview offering a "Trial Period Plan."

[17] In his amended complaint, Mr. Plouffe states that in September 2015 he submitted "yet another application through the housing counselor, but has not received any response from the Defendants"—he appears to be referencing this August 23, 2015 application. No evidence of a September 2015 application has been provided by either party. (See Doc. No. 16 ¶ 59.)

On September 18, 2015, Bayview sent another letter stating that it had been attempting repeatedly to reach Mr. Plouffe by phone and encouraging him to return the call. (Id.) Three days later, on September 21, 2015, Bayview sent another letter with information about the deed-in-lieu program and again asking Mr. Plouffe to call. (Ex. AK.)

Mr. Collins responded in writing on September 24, 2015. (Ex. AL.) He stated that Bayview's September 21, 2015 deed-in-lieu offer "appear[ed] to be exactly the same form letter you sent to me earlier this year, to which I responded I was interested, whereupon you ignored my response and expression of interest. . . . Once again, I am indicating my interest and would like to know how much you are offering and what are the terms and conditions." (Id.) Further, Mr. Plouffe requested that Bayview communicate with him through his housing counselor, "as was discussed at the recent arbitration hearing involving the attorney for Bayview." (Id.) The facts and evidence presented to this court leave off here, in September of 2015.

## II.     PROCEDURAL HISTORY

Mr. Plouffe initiated this action on October 26, 2015.[18] (Doc. No. 1.)  On February 11, 2016, the defendants moved to dismiss the plaintiff's complaint. (Doc. No. 7.) On April 14, 2016, the plaintiff filed his response to the defendants' motion to dismiss and

---

[18] A Pennsylvania state court foreclosure action, initiated against Mr. Plouffe on March 13, 2015, has been proceeding parallel to this action.

requested to file an amended complaint, which I permitted and which the plaintiff filed on April 19, 2016. (Doc. Nos. 14–16.)

The defendants then filed their second motion to dismiss on May 9, 2016, to which the plaintiff responded on June 14, 2016 and June 20, 2016. (Doc. Nos. 18, 24, 25.) On October 31, 2016, I granted in part and denied in part the defendants' motion to dismiss—leaving only Mr. Plouffe's FDCPA and RESPA claims, currently before me on summary judgment. (Doc. Nos. 27, 28.) On November 9, 2016, the defendants submitted their answer to the plaintiff's complaint. (Doc. No. 29.)

On September 8, 2017, the defendants filed a motion for summary judgment, with a statement of undisputed material facts (Doc. No. 55), to which the plaintiff responded (Doc. No. 56) and objected (Doc. No. 57), respectively, on September 29, 2017. On October 9, 2017, the defendants replied to the plaintiff's response. (Doc. No. 59.) On November 20, 2017, the plaintiff submitted a briefing titled "Plaintiff's errata to response to defendants' motion for summary judgment." (Doc. No. 61.) The defendants' motion for summary judgment is now ripe for decision.

## III. LEGAL STANDARD

A court shall grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it would affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A disputed issue is "genuine" if it would allow a reasonable fact-finder to return a verdict in favor of the

nonmoving party. Id. Summary judgment is appropriate when the nonmoving party fails

to provide evidence "sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986).

The party seeking summary judgment must inform the court of the basis for its

motion and identify the portions of the record that demonstrate "the absence of a genuine

issue of material fact." Id. at 323. Relevant portions of the record include "depositions,

documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory

answers, or other materials." Fed. R. Civ. P. 56(c)(1). Alternatively, the moving party can

show "that the materials cited [by the nonmoving party] do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Id.

When determining whether to grant summary judgment, a court must draw "all

justifiable inferences" in favor of the nonmoving party and must conclude not whether

"the evidence unmistakably favors one side or the other but whether a fair-minded jury

could return a verdict for the plaintiff on the evidence presented." Anderson, 477 U.S. at

252, 255.

## IV.    DISCUSSION

The defendants argue that summary judgment in their favor is proper based on

several arguments—abstention, lack of standing, and substantive application of the

FDCPA and RESPA. Based on the following analysis, I will grant summary judgment in

the defendants' favor on all claims, after examining the merits of the plaintiff's FDCPA and RESPA claims. Even viewing the facts in the light most favorable to Mr. Plouffe, a reasonable jury could not find in his favor under either applicable statute.

### A. Abstention and Claim Preclusion

#### 1. The State Court Dismissed the Claims at Issue

The defendants argue that summary judgment in their favor is proper because Mr. Plouffe's federal claims were also pending in the state court foreclosure action, where Mr. Plouffe supported his claims with the exact same facts, verbatim, as his federal complaint. (Doc. No. 55, at 11.)

Regarding the factual allegations in both cases, Mr. Plouffe indeed appears to have copied the "New Matter" of his state court answer into his federal amended complaint, almost in full, save for a few immaterial differences. (Compare State Ct. Answer, Doc. No. 55-4, Ex. AT ¶¶ 18–90 with Fed. Ct. Am. Compl., Doc. No. 16 ¶¶ 1–76.)

More potentially problematic, Mr. Plouffe included RESPA claims in the "affirmative defenses" and "cross/counter claims" sections of his answer in state court. (Doc. No. 55-4, Ex. AT ¶¶ 103, 104, 114, 115, 116.) However, there do not appear to be any FDCPA claims within Mr. Plouffe's state court answer, as the defendants claim, and the defendants did not provide any citations. (See Doc. No. 55-4, Ex. AT; Doc. No 55, at 11.)

On January 16, 2018, after the defendants' filing of their motion for summary

judgment, the state court issued an order regarding the RESPA claims that overlapped

with this case. Order, No. 15-3035 (Pa. Ct. Comm. Pleas. Jan. 16, 2018). The state court

order granted the plaintiff's preliminary objections and accordingly dismissed Mr.

Plouffe's "New Matter, Affirmative Defenses, and Counterclaim," which included his

RESPA claim, with prejudice. (Id.) Because the state court issued a ruling on this federal

claim, this is no longer an abstention doctrine issue; it is instead a claim preclusion issue.

### 2. Claim Preclusion

When state and federal actions proceed on parallel tracks, it is well established that

"the pendency of an action in the state court is no bar to proceedings concerning the same

matter in the Federal court having jurisdiction." Exxon Mobil Corp. v. Saudi Basic Indus.

Corp., 544 U.S. 280, 292 (2005). A federal court does not lose jurisdiction when the state

court renders a decision. Id. "Disposition of the federal action, once the state-court

adjudication is complete, would be governed by preclusion law." Id. at 293.

The Full Faith and Credit Act states that judicial proceedings "shall have the same

full faith and credit in every court within the United States" as they have in their home

state. 28 U.S.C. § 1738; see also id. To determine whether a claim that was decided in

state court while it was pending in federal court is precluded, federal courts look to "the

law of the adjudicating state." Clientron Corp. v. Devon IT, Inc.,154 F. Supp. 3d 132, 144

(E.D. Pa. 2015). "In determining the applicability of principles of res judicata

[synonymous here with claim preclusion], we must give the same preclusive effect to the

judgment in the common pleas court case that the courts in Pennsylvania, the state in which the judgment was entered, would give." <u>Turner v. Crawford Square Apartments III, L.P.</u>, 449 F.3d 542, 548 (3d Cir. 2006).

For a claim to be precluded, Pennsylvania courts require that the two actions share four factors: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." <u>Id.</u> (citing <u>Bearoff v. Bearoff Bros., Inc.</u>, 327 A.2d 72, 74 (Pa. 1974)); <u>see also</u> <u>Total Control, Inc. v. Danaher Corp.</u>, 359 F. Supp. 2d 380, 384 (E.D. Pa. 2005) (applying the same four factors).

In this case, the first and second factors are dispositive. First, Mr. Plouffe is suing the defendants for damages due to their alleged failure to comply with federal law. On the other hand, in the state court foreclosure proceeding, "the thing being sued upon or for" is Mr. Plouffe's property itself. In other words, "[m]ortgage foreclosure in Pennsylvania is strictly an *in rem* or "*de terris*" proceeding. Its purpose is to effect a judicial sale of the mortgaged property." <u>Nicholas v. Hofmann</u>, 158 A.3d 675, 696 (Pa. Super. Ct. 2017).

Pennsylvania Rule of Civil Procedure 1148 governs permissible counterclaims in a mortgage foreclosure proceeding and states:

> A defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose.

Pa. R. Civ. P. 1148.

Pennsylvania courts interpret this rule narrowly and only permit counterclaims that are "part or incident to the creation of the mortgage relationship itself." Nicholas, 158 A.3d at 697. Therefore, Rule 1148 does not permit "counterclaims where the facts giving rise to the counterlcaims occur after the creation of the mortgage and after the mortgagors were in default." Id. Additionally, "[w]hile Rule 1148 does not govern affirmative defenses listed as New Matter, such defenses must be more than a restatement or continuation of an impermissible counterclaim." Id.

Given Pennsylvania law regarding the claims that can be brought as counterclaims and affirmative defenses in mortgage foreclosure proceedings, it was clearly improper for Mr. Plouffe to bring a federal claim as a counterclaim or affirmative defense in the state court foreclosure action against him because his federal claims did not arise from the "same transaction or occurrence" as the foreclosure action on his property. See Pa. R. Civ. P. 1148. Accordingly, the state court properly dismissed Mr. Plouffe's RESPA claim, among other claims. All of this is to say, "the thing being sued upon or for" in state court is property. In federal court, the "thing" is an alleged violation of federal law. Therefore, this case fails the first of the four claim preclusion factors.

Second, a "cause of action" is the same if there is commonality between "the identity of the acts complained of, the demand for recovery, the identity of witnesses, documents, and facts alleged." Turner, 449 F.3d at 549. Here, the factual basis for the state foreclosure action against Mr. Plouffe and the factual basis for Mr. Plouffe's claims of actionable behavior by his mortgage servicer and individual defendants are almost

completely separate—and demand separate forms of proof. The foreclosure action is rooted in Mr. Plouffe's nonpayment; the federal action is rooted in the defendants' communications regarding mortgage modification options. With that, this second factor, a common cause of action, is not satisfied. Therefore, pursuant to Pennsylvania preclusion law, Mr. Plouffe's FDCPA and RESPA claims are not precluded and are properly before me in federal court.

## B. Injury in Fact

The defendants argue that Mr. Plouffe lacks standing to bring his case in this court because he has not demonstrated "injury in fact," a requirement for standing, adequately to overcome summary judgment. This argument by defendants does not address the specific claims or statutes at issue but makes the general pronouncement that Mr. Plouffe has failed to establish constitutional standing to bring his case. Given the standards for injury in fact articulated by the Supreme Court and the Third Circuit, and given that Mr. Plouffe is a pro se plaintiff bringing his claims under consumer protection statutes implemented by Congress to protect people in difficult yet powerless positions, I will find that Mr. Plouffe has demonstrated injury in fact sufficient to establish standing.[19]

To meet the injury in fact requirement of standing, a plaintiff must "allege an injury that is both 'concrete *and* particularized.'" Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1545 (2016). An injury is "particularized" if it affects the plaintiff "in a personal and individual way." Id. at 1548. An injury is "concrete" if it is "real, and not abstract." Id.

---

[19] I will separately address the issue of statutory damages below, in the context of RESPA.

(internal quotations omitted). An allegation of a "bare procedural violation" is not sufficient to demonstrate injury in fact. Id. at 1550. A plaintiff has established injury in fact "as long as the party alleges a specific, identifiable trifle of injury." In re Glob. Indus. Tech., Inc., 645 F.3d 201, 210 (3d Cir. 2011) (internal quotations omitted).

Congress can elevate "previously inadequate" injuries to "legally cognizable injuries." Spokeo, Inc., 136 S. Ct. at 1549 (quoting Lujan v. Def. of Wildlife, 504 U.S. 555, 578 (1992)). However, even "in the context of a statutory violation," constitutional standing "requires a concrete injury." Id.

A plaintiff "need not suffer any particular type of harm to have standing." In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 636 (3d Cir. 2017) (internal quotations omitted) (quoting In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 134 (3d Cir. 2015)). "[T]he actual or threatened injury . . . may exist *solely by virtue of statutes creating legal rights*, the invasion of which creates standing,' even absent evidence of actual monetary loss." Id. (quoting In re Google Inc., 806 F.3d at 134).

Mr. Plouffe brings his claims under the FDCPA and RESPA. Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Bock v. Pressler & Pressler, LLP, 245 F. Supp. 3d 724, 734 (D.N.J. 2017) (quoting § 1692(e)). The FDCPA affords substantive rights, as

opposed to inadequate "bare procedural violation[s]." <u>Id.</u> at 735–36 (citing <u>Linehan v. Allianceone Receivables Mgmt., Inc.</u>, No. C15-101-JCC, 2016 WL 4765839, *8 (W.D. Wash. Sept. 13, 2016) ("The goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury.")). Along the same lines, Congress enacted RESPA to provide substantive rights to consumers in the residential real estate market. <u>See</u> § 2601; <u>see also</u> <u>Alston v. Countrywide Fin. Corp.</u>, 585 F.3d 753, 762, 763 n.12 (3d Cir. 2009).

Here, Mr. Plouffe's injury is indisputably particularized. He alleges that he personally suffered injury due to *his* mortgage servicer's handling of *his* loan. Regarding concreteness, I find that it is also established here, given the nature and purpose of the statutes at issue. Congress enacted the FDCPA and RESPA, both consumer protection statutes, to create previously nonexistent rights to shield consumers from detrimental practices. In Mr. Plouffe's amended complaint (and as further evidenced by the defendants' exhibits), he details particular events and communications with his mortgage provider that he alleges violated federal law. Further, he claims that the defendants' alleged misdeeds caused him to "incur[] numerous costs" and caused him "excessive stress and aggravation of existing medical conditions and his disability."[20] (Doc. No. 16 ¶ 121.) Because Mr. Plouffe is claiming that his substantive RESPA and FRCPA rights have been violated—to his financial detriment and, more importantly, to his detriment as a consumer to whom Congress has afforded these rights—I find that Mr. Plouffe has

---

[20] Mr. Plouffe also requests equitable relief, and fees and costs. (Doc. No. 16 ¶¶ 122–123.)

22

demonstrated injury in fact sufficient to establish Article III standing.

## C. FDCPA

The FDCPA was enacted to "eliminate abusive debt collection practices" in order to protect consumers and promote uniformly fair procedures. § 1692. Mr. Plouffe's brings his FDCPA claims under §§ 1692d–f.[21]

In their motion for summary judgment, the defendants claim that the plaintiff failed to establish that they "engaged in prohibited practices in an attempt to collect a debt." (Doc. No. 55, at 21 (citing <u>Pollice v. Nat'l Tax Funding, L.P.</u>, 225 F.3d 379, 403 (3d Cir. 2000)).)

Under § 1692d, the FDCPA prohibits "[h]arassment or abuse" of a consumer by a debt collector. Section 1692e prohibits debt collectors from using "false, deceptive, or misleading representation or means" to collect a debt. Section § 1692f prohibits debt collectors from using "unfair or unconscionable means" to collect a debt.

In the FDCPA analysis below, claims that share a common analysis are grouped together. For ease of reference, I will first list all of Mr. Plouffe's FDCPA claims as presented in amended complaint.

A. CLAIM 1 – Fair Debt Collection Procedure Act

79.	The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, during the course of engaging in debt collection

---

[21] Mr. Plouffe numbers these sections §§ 806–808 in his amended complaint, using the public law numbering. I will instead use the United States Code numbering.

activities, by falsely stating that there would be no starting/continuing foreclosure actions against Plouffe while his application was pending, violated § 807 [§ 1692e] False or Misleading Representations of the FDCPA and § 808 [§ 1692f] Unfair Practices of the FDCPA and constituted at least three counts based on the allegations presented in this Amended Complaint.

B. CLAIM 2 – Fair Debt Collection Procedure Act

80.     The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, during the course of engaging in debt collection activities, by stating an invalid and past due date as a limit for Plouffe to respond to the demands of the Defendants, violated § 807 [§ 1692e] False or Misleading Representations of the FDCPA and § 808 [§ 1692f] Unfair Practices of the FDCPA.

C. CLAIM 3 – Fair Debt Collection Procedure Act

81.     The Acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, during the course of engaging in debt collection activities, by repeatedly demanding documents that simply did not exist (receipts for foodstamps), stating an invalid and past due date as a limit for Plouffe to respond to the demands of the Defendants, violated § 806 [§ 1692d] Harassment or Abuse of the FDCPA and § 807 [§ 1692e] False or Misleading Representations of the FDCPA and § 808 [§ 1692f] Unfair Practices of the FDCPA and constituted at least two counts based on the allegations presented in this Amended Complaint.

D. CLAIM 4 – Fair Debt Collection Procedure Act

82.     The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, during the course of engaging in debt collection activities, by falsely stating the value of Plouffe's house and without responding to Plouffe's request for explanations, violated § 806 [§ 1692d] Harassment or Abuse of the FDCPA and § 807 [§ 1692e] False or Misleading Representations of the FDCPA and § 808 [§ 1692f] Unfair Practices of the FDCPA and constituted at least two counts based on the allegations presented in this Amended Complaint.

E. CLAIM 5 – Fair Debt Collection Procedures Act

83.     The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, during the course of engaging in debt collection activities, by incorrectly requiring Plouffe to acquire/obtain house insurance when they were prohibited from doing so by federal law, violated

§ 806 [§ 1692d] Harassment or Abuse of the FDCPA and § 807 [§ 1692e] False or Misleading Representations of the FDCPA and § 808 [§ 1692f] Unfair Practices of the FDCPA and constituted at least two counts based on the allegations presented in this Amended Complaint.

F. CLAIM [6][22] – Fair Debt Collection Procedures Act

84.     The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, during the course of engaging in debt collection activities, by falsely stating that a letter advising of deadlines had been sent on January 2, when it was not sent to Plouffe until two weeks later, violated § 806 [§ 1692d] Harassment or Abuse of the FDCPA and § 807 [§ 1692e] False or Misleading Representations of the FDCPA and § 808 [§ 1692f] Unfair Practices of the FDCOA and constituted at least two counts based on the allegations presented in this Amended Complaint.

G. CLAIM [7] – Fair Debt Collection Procedures Act

85.     The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, during the course of engaging in debt collection activities, by refusing to process Plouffe's request for a forbearance as required by federal law, violated § 806 [§ 1692d] Harassment or Abuse of the FDCOA and § 807 [§ 1692e] False or Misleading Representations of the FDCPA and § 808 [§ 1692f] Unfair Practices of the FDCPA and constituted at least two counts based on the allegations presented in this Amended Complaint.

H. CLAIM [8] – Fair Debt Collection Procedures Act

86.     The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, during the course of engaging in debt collection activities, by refusing to communicate with Plouffe by letters and ignoring Plouffe's requests for information and assistance, despite knowing Plouffe had limited telephone service, violated § 806 [§ 1692d] Harassment or Abuse of the FDCPA and § 807 [§ 1692e] False or Misleading Representations of the FDCPA and § 808 [§ 1692f] Unfair Practices of the FDCPA and constituted at least six counts based on the allegations presented in this Amended Complaint.

I. CLAIM [9] – Fair Debt Collection Procedures Act

87.     The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, during the course of engaging in debt collection

---

[22] M.r. Plouffe titled two counts "Claim 5" in his complaint. The numbering is changed here to avoid repetition so that later references to the claims in this opinion will be clear.

activities, by sending and demanding of Plouffe repeated completions of the same application packets for a loan modification, violated § 806 [§ 1692d] Harassment or Abuse of the FDCPA and § 807 [§ 1692e] False or Misleading Representations of the FDCPA and § 808 [§ 1692f] Unfair Practices of the FDCPA.

J. CLAIM [10] – Fair Debt Collection Procedures Act

88. The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, during the course of engaging in debt collection activities, by misrepresenting, by statement or omission, the status of the Bank and Bayview, violated § 806 [§ 1692d] Harassment or Abuse of the FDCOA and § 807 [§ 1692e] False or Misleading Representations of the FDCOA and § 808 [§ 1692f] Unfair Practices of the FDCPA.

K CLAIM [11] – Fair Debt Collection Procedures Act

89. The acts of the Defendants, Bayview and Jean Pierre, as self admitted debt collectors and by law, during the course of engaging in debt collection activities, by attempting to procure Plouffe's acquiescence to changing the terms of his previous Loan Modification Agreement to apparently release the Bank from potential liability in this matter, violated § 806 [§ 1692d] Harassment or Abuse of the FDCPA and § 807 [§ 1692e] False or Misleading Representations of the FDCPA and § 808 [§ 1692f] Unfair Practices of the FDCPA.

(Doc. No. 16 ¶¶ 79–89.)

### 1. FDCPA Claims 2, 4, 5

The plaintiff concedes any argument regarding claims 2, 4, and 5 (Doc. No. 56, at 10), and I find that summary judgment in the defendants' favor is proper because no reasonable jury could find in his favor on these claims.

### 2. FDCPA Claims 3, 6–9

Regarding claims 3, 6–9, viewing the facts in the light most favorable to Mr. Plouffe, there are no provisions within §§ 1692d–f that prohibit the conduct he claims is unlawful. To the extent Mr. Plouffe alleges false or misleading

statements by the defendants under § 1692e, either generally or under § 1692e(10), he has not provided evidence that any of the relevant statements were in fact false. Therefore, a reasonable jury could not find in his favor on claims 3, 6–9, and summary judgment in the defendants' favor is proper.

### 3. FDCPA Claim 1

In his response to the defendants' motion to dismiss, Mr. Plouffe reiterates the claim from his amended complaint "that Collins/Bayview falsely stated that there would be no continuing foreclosure actions against Plouffe"—and that this allegedly false statement by the defendants violated the FDCPA §§ 1692d–f.[23] (Doc. No. 56, at 9–10 (citing Pl.'s Aff., Ex. A).) Exhibit A is Mr. Plouffe's own sworn statement. It states: "During the course of my communications with the Defendants, Collins and Bayview, Collins stated several times that the mortgage foreclosure proceeding would not proceed during the pendency of my application for modification." (Doc. No. 57, Ex. A ¶ 3.) This bald, nonspecific accusation against the defendants not only lacks evidence, it also lacks any specificity, such as the time, date, frequency, or context of the defendants' statements. It provides no evidence beyond the allegations in Mr. Plouffe's amended complaint. And it does not even provide a reason why specific evidence could not be presented at this stage of the proceeding. This affidavit, without more, does not create a genuine issue of material fact sufficient to overcome summary judgment.

---

[23] In Mr. Plouffe's amended complaint (Doc. No. 16), claim 1 only alleges wrongdoing under §§ 1692e–f., not subsection "d." This discrepancy between his amended complaint and his response to the defendants' motion for summary judgment is immaterial since it does not change the fact that summary judgment in the defendants' favor is proper.

Additionally, the evidence before the court provided by the defendants fails to support Mr. Plouffe's allegation of a false statement. Though Mr. Plouffe does not cite to or provide evidence, except his affidavit, to support this claim, the claim may stem at least in part from a letter he received from Bayview, dated December 16, 2014. (Doc. No. 55, Ex. K.) In this letter, Bayview responded to Mr. Plouffe's "Loss Mitigation application" and stated that his application was missing certain required information. The letter went on to state: "If your loan is delinquent, collection/foreclosure activity currently in progress will continue to proceed during the review process of your request for a workout." (Id.) Several paragraphs later, the letter stated: "After we receive all required documentation, we will process your request as quickly as possible. **While we consider your request, your home will not be referred to foreclosure**." (Id. (emphasis in original).) This December 2014 letter predated the foreclosure action against Mr. Plouffe, initiated on March 13, 2015 in Berks County Civil Court. (Doc. No. 55, Ex. Z.)

As noted, Mr. Plouffe alleges violations of §§ 1692d–f of the FDCPA. First, to narrow this down, there are no provisions of § 1692d or § 1692f that are relevant here. Section 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

Even viewing the facts in the light most favorable to Mr. Plouffe, his claim does not demonstrate a "false, deceptive, or misleading representation or means" of debt collection. § 1692e. Mr. Plouffe alleges that the defendants misrepresented whether the foreclosure process would continue after he submitted an application—an application that

Bayview considered incomplete. Yet, he neither provides nor cites to any evidence to support this claim. Further, the December 16, 2014 letter from Bayview makes it clear that foreclosure proceedings will not be stalled unless and until Bayview reviews the modification application—which would require its completion. (Doc. No. 55, Ex. K.) Given the complete lack of evidence to support this claim, and the December 2014 letter from Bayview that provides direct evidence to the contrary, I find that there is no genuine issue of material fact, and summary judgment in the defendants' favor on claim 1 is appropriate.

### 4. FDCPA Claim 10–11

In his amended complaint, under claim 10, Mr. Plouffe notes confusion as to the "status" of "the Bank [presumably M & T Bank, a defendant] and Bayview." (Doc. No. 16 ¶ 88.) In his response to the defendants' motion for summary judgment, he notes that it is unclear "who is the lender and who is the agent and who is the servicer and the real party in interest." (Doc. No. 56, at 11.) In claim 11, Mr. Plouffe argues that the defendants attempted "to procure Plouffe's acquiescence to changing the terms of his previous Loan Modification Agreement to apparently release the bank from potential liability in this matter." (Doc. No. 16 ¶ 89.)

Presumably, in claim 11, Mr. Plouffe is referring to a letter sent by Bayview on October 8, 2015. The letter explained that a mistake had been made in a previous correspondence and that due to a "clerical error," the "Loan Modification Agreement"

documents listed "M&T Bank" as the lender, though Bayview was the lender. (Doc. No. 55, Ex. AN.)

It is unclear in claims 10 and 11 whether Mr. Plouffe claims that his resulting confusion about the parties' roles somehow violates federal law or whether he claims that the "clerical error" is an actionable misrepresentation under the FDCPA—or both. Regardless, I find that summary judgment in the defendants' favor is appropriate on claims 10 and 11 because Mr. Plouffe has not put forth any evidence that would support a cognizable FDCPA claim, and a reasonable jury could not find in his favor.

### D. RESPA

Enacted to protect residential real estate consumers, RESPA serves to implement more effective disclosure of settlement costs to buyers and sellers, to eliminate "kickbacks and referral fees" during the settlement process, to reduce the "amounts home buyers are required to place in escrow accounts," and to reform "local recordkeeping of land title information." 12 U.S.C. § 2601. Importantly to this case, RESPA and its corresponding regulations (Regulation X), afford rights to consumers regarding the servicing of their "federally related" mortgages. 12 C.F.R. § 1024.5; § 1024.1; see also Gehman v. Argent Mortg. Co. LLC, 726 F. Supp. 2d 533, 540 (E.D. Pa. 2010); Joussett v. Bank of America, N.A., No. 15-6318, 2016 WL 5848845 (E.D. Pa. Oct. 6, 2016). In the analysis below, claims that share a legal analysis are grouped together. Mr. Plouffe brings the following claims under RESPA and Regulation X:

L. CLAIM 11a – RESPA and Regulation X

90.     The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, by failing to timely respond to Plouffe's repeated requests for information, under § 1024.36 and § 1024.41, violated these laws and constituted at least ten counts based on the allegations presented in this Amended Complaint.

M. CLAIM 11b – 41 P.S. § 401[24] adopting RESPA and Regulation X

91.     Same allegations as Claim 11a.

N. CLAIM 12a – RESPA and Regulation X

92.     The acts of the Defendants, Bayview and Jean Pierre, as self admitted debt collectors and by law, by failing to timely respond to Plouffe's repeated requests for information, under § 1024.36 and § 1024.41, violated these laws and constituted at least two counts based on the allegations presented in this Amended Complaint.

N. [sic] CLAIM 12b - 41 P.S. § 4021[25] adopting RESPA and Regulation X

93.     Same allegations as Claim 12a.

O. CLAIM 13a – RESPA and Regulation X

94.     The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, by forcing Plouffe to obtain his own house insurance, under § 1024.37, violated the law and constituted at least two counts based on the allegations presented in this Amended Complaint.

P. CLAIM 13b – 41 P.S. § 4021 adopting RESPA and Regulation X

95. Same allegations as Claim 13a.

Q. CLAIM 14a – RESPA and Regulation X

96.     The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, by failing to provide Plouffe with accurate information as to the filing/continuing of foreclosure actions (twice) and by providing false information as to house valuation (twice) and by providing

---

[24] This Pennsylvania statute states, in relevant part, that residential mortgage lenders shall comply with RESPA and its corresponding regulations. It does not create a right of action or establish a standard for liability. Therefore, I will not address it separately from the RESPA analysis.

[25] This is not a Pennsylvania statute. Presumably, here and in subsequent references, Mr. Plouffe is intending to reference 41 P.S. § 401, which I address in my previous footnote.

incorrect dates as to deadlines (twice) and by requiring non-existent documents (ie, food stamp receipts) to evaluate Plouffe's claim (twice) and by refusing to evaluate Plouffe's request for a forbearance (twice), under § 1024.38,[26] violated the law and constituted at least ten counts based on the allegations presented in this Amended Complaint.

R. CLAIM 14b - 41 P.S. § 4021 adopting RESPA and Regulation X

97.    Same allegations as Claim 14a.

S. CLAIM 15a - RESPA and Regulation X

98.    The acts of the Defendants, Bayview and Collins, as self admitted debt collectors and by law, by failing to provide Plouffe with reasonable dates to submit documents (twice) and by failing to evaluate Plouffe for all loss mitigation options (i.e., forbearance) (twice), under § 1024.41, violated the law and constituted at least four counts based on the allegations presented in this Amended Complaint.

T. CLAIM 15b - 41 P.S. § 4021 adopting RESPA and Regulation X

99.    Same allegations as Claim 15a.

U. CLAIM 16a - RESPA and Regulation X

100.    The acts of the Defendants, Bayview and Collins, by failing to provide Plouffe with good faith estimates of the value of his house (twice) and by failing to respond to Plouffe's responses to them, under § 1024.7, violated the law and constituted at least two counts based on the allegations presented in this Amended Complaint.

V. CLAIM 16b - 41 P.S. § 4021 adopting RESPA and Regulation X

101.    Same allegations as Claim 16a.

W. CLAIM 17a - RESPA and Regulation X

102.    The acts of the Defendants, Bayview and Collins, by failing to respond to Plouffe in writing, except with form letters and then ignoring Plouffe's specific requests and limiting communication to telephone when the Defendants knew Plouffe lacked telephone service, violated RESPA and Regulation which requires written responses through the regulation.[27]

---

[26] Section 1024.38 does not provide a private right of action. Joussett, 2016 WL 5848845, at *5.
[27] Mr. Plouffe has not identified, and I cannot find, a regulation that would provide a basis for this claim.

V. CLAIM 17b - 41 P.S. § 4021 adopting RESPA and Regulation X

103.    Same allegations as Claim 17a.

(Doc. No. 16, ¶¶ 90–103.)

### 1. Claims 11 and 12

I will address the plaintiff's claims 11 and 12 together because they are identical except for the individual defendant named in each. In these claims, Mr. Plouffe alleges that the defendants violated Regulation X section 1024.36[28] "by failing to timely respond to Plouffe's repeated requests for information." (Doc. No. 16 ¶¶ 90, 92.) For the reasons below, I find that summary judgment in the defendants' favor is proper because Mr. Plouffe has failed to show that he suffered "actual damages" due to the defendants' actions.

To trigger a mortgage servicer's responsibility to respond under section 1024.36, a borrower's request must "include[] the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and state[] the information the borrower is requesting with respect to the borrower's mortgage loan." § 1024.36(a).

A "qualified written request" (QWR) by a borrower meets this description and triggers the mortgage server's responsibilities to respond. Id. A QWR provides or allows for the identification of the borrower's name and account

---

[28] To the extent claims 11 and 12 allege a violation of section 1024.41, my analysis under claim 15 applies to claims 11 and 12, and I find that summary judgment in the defendants' favor is proper as to all claims under section 1024.41.

number and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." § 2605(e)(1)(B).

A mortgage servicer, upon receiving such a request, must either: (1) fulfill the request in writing, or (2) conduct a "reasonable search" for the information and state in a "written notification" that the information is not available. § 1024.36(d)(1). Further, it must do so within either 10 or 30 days, depending on the nature of the request. § 1024.36(d)(2).

The "essential elements" of this claim are: "(1) the submission of a qualified written request by a borrower to a loan servicer; (2) a failure by the loan servicer to timely respond; and (3) damages." Stefanowicz v. Sun Trust Mortg., No. 3:16-CV-368, 2018 WL 1385976, *5 (M.D. Pa. Feb. 13, 2018); Hawk v. Carrington Mortg. Servs., LLC, No. 3:14-1044, 2016 WL 4414847, at *4 (M.D. Pa. Aug. 17, 2016); see also Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1246 (11th Cir. 2016) (stating that "damages are an essential element in pleading a RESPA claim"). The damages element requires that a borrower allege not only a breach but also a connection between the breach and actual damages. Hawk, 2016 WL 4414847, at *4. The borrower must "present specific evidence to establish a causal link between the financing institution's violation and their injuries." Id.

If a mortgage servicer fails to comply with RESPA, it is liable to an individual plaintiff for "actual damages." § 2605(f)(1). Section 2605(f)(1) explains servicers' liability to individual borrowers as follows:

> **(f) Damages and costs**
>
> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> **(1) Individuals**
>
> In the case of any action by an individual, an amount equal to the sum of--
>
> **(A)** any actual damages to the borrower as a result of the failure; and
>
> **(B)** any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

§ 2605(f)(1).

For a RESPA claim to survive summary judgment, a borrower must present evidence of a plausible "causal link between the alleged violations and the alleged damages." Davis v. Deutsche Bank Nat'l Trust Co., No. 16-5382, 2017 WL 6336473, at *7 (E.D. Pa. December 12, 2017); Capozio v. JP Morgan Chase Bank, NA, No. 16-5235, 2017 WL 5157532, at *4 (E.D. Pa. Nov. 7, 2017) ("Plaintiffs' amended complaint is silent with respect to any actual damages suffered as a result of the alleged RESPA violation. As such, Plaintiffs have failed to allege a RESPA claim."); Andress v, Nationstar Mortg., LLC, No. 15-1779, 2016 WL 75085, at *4 (E.D. Pa. 2016); Wilson v. Bank of America, N.A., 48 F. Supp. 3d 787, 799 (E.D. Pa. 2014); Benner v. Bank of America, N.A., 917 F. Supp. 2d 338, 364 (E.D. Pa.

2013) ("[A] plaintiff must also show that the breach caused him to suffer damages.").

"Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence." Wilson, 48 F. Supp. 3d at 799 (quoting Cortez v. Keystone Bank, Inc., No. 98-2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000). RESPA and Regulation X do not define "actual damages." Black's Law Dictionary defines "actual damages" as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." Actual Damages, Black's Law Dictionary, (10th ed. 2014).

In Wilson, the court denied summary judgment on the issue of damages because the plaintiffs "presented competent evidence that their available credit was decreased by the amount of outstanding interest charges . . . and they were thus unable to earn interest on other accounts." Wilson, 2000 WL 536666, at *12. In Renfroe, the court denied a motion for summary judgment where the plaintiff "alleged she sustained actual damages when [defendant] failed to refund her mortgage overpayments." 882 F.3d 1241, 1246 (11th Cir. 2016). In Benner, the court denied a motion to dismiss because the court found it "reasonable to infer that a borrower in default who repeatedly seeks—yet fails to obtain—information

about his financial situation could have damages for mental and emotional suffering." <u>Benner</u>, 917 F. Supp. 2d at 365.

Benner quoted an Eleventh Circuit case, which stated: "Construing the term 'actual damages' broadly, and based on the interpretations of 'actual damages' in other consumer-protection statutes that are remedial in nature, plaintiffs arguably may recover for non-pecuniary damages, such as emotional distress and pain and suffering, under RESPA." <u>McLean v. GMAC Mortg. Corp.</u>, 398 Fed. App'x. 467, 471 (11th Cir. 2010). However, to prove such damages, "the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a … violation occurred supports an award for compensatory damages." <u>Id.</u> (quoting <u>Akouri v. Fla. Dep't of Transp.</u>, 408 F.3d 1338, 1345 (11th Cir. 2005)).

Here, the defendants argue that Mr. Plouffe's repeated unanswered requests for information should not invoke RESPA liability because his requests (1) "were directed to Hakeem Collins, and not to Customer Support, as required," (2) predominantly contained "unsupported accusations or demands" and repeated issues "from his January 29, 2015 letter, which itself merely advanced baseless accusations about his loss mitigation submissions and was not a QWR." (Doc. No. 55, at 17 –19.) Further, the defendants argue that (3) Mr. Plouffe "has not suffered

any actual damages" caused by his unanswered requests for information. (Id. at 19.) I will address all three arguments; the final argument is dispositive.

The defendants' first argument, that Mr. Plouffe directed his correspondence to the incorrect contact at Bayview, cannot justify summary judgment in their favor. Section 1024.36(b) permits a mortgage servicer to establish a proper address for borrowers' requests:

> A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to request information in accordance with the procedures in this section. The notice shall include a statement that the borrower must use the established address to request information.

§ 1024.36(b).

However, the defendants do not cite to or provide evidence of any instruction directing Mr. Plouffe to send his requests to a specified contact or address. They merely point out that Mr. Plouffe addressed his letters to Mr. Collins, without showing why this was improper. Further, almost all letters from Bayview provided to the court as exhibits instruct Mr. Plouffe to contact Mr. Collins with any questions. (See, e.g., Ex. O.) Lastly, the defendants do not dispute that Bayview indeed received Mr. Plouffe's letters. With that, the argument that Mr. Plouffe should have directed his correspondence elsewhere cannot justify summary judgment.

The defendants' second argument, that Mr. Plouffe's correspondence failed to meet the standards of a request for information under RESPA, also fails to

justify summary judgment.[29] Viewing the facts in the light most favorable to Mr. Plouffe, a reasonable jury could find that his correspondence "includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information that the borrower is requesting with respect to the borrower's mortgage loan." § 1024.36(a).

Mr. Plouffe wrote to Bayview requesting information about the sufficiency of his proof of foodstamps, requesting information regarding what documents were missing from his mortgage modification application, requesting an indication of whether certain documents he submitted were received, requesting the standards for mortgage modification that he failed to meet, requesting further information about loan modification options, and requesting contact information for Mr. Collins's supervisor (and a contact at M&T Bank). (Doc. No. 56, at 8–9; see, e.g., Exs. Q, R.) Whether Mr. Plouffe's requests trigger the defendants' responsibilities under section 1024.36 is a genuine issue of material fact appropriate for a jury.

Third, the defendants argue that Mr. Plouffe has not suffered "actual damages," as required for an actionable claim under section 1324.36. (Doc. No. 55, at 17 –19.) Based on the analysis below, summary judgment in the defendants' favor is proper based on this argument because Mr. Plouffe has failed to show that he suffered any "actual damages" under RESPA.

---

[29] My analysis of this issue at the motion to dismiss stage applies here as well. (Doc. No. 27, at 14–15.)

In his amended complaint, Mr. Plouffe stated the following regarding damages:

> 121.    Plouffe was damaged in that he incurred numerous costs in trying to exercise his rights under the applicable law, rules, and regulations. Plouffe also alleges excessive stress and aggravation of existing medical conditions and his disability. Plouffe requests that he be awarded all statutory, compensatory, consequential, and punitive damages. Plouffe alleges damages in excess of $75,000.

> 122.    Plouffe also requests equitable relief in that the Defendants be ordered to fully comply with all laws, rules, and regulations applicable with this matter; all foreclosure causes of action be stayed until they fully comply with all laws, rules, and regulations applicable to this matter; all sheriff's sales be stayed until they fully comply with all laws, rules, and regulations applicable to this matter; all evictions/removals of Plouffe from his residence be stayed until they fully comply with all laws, rules, and regulations applicable to this matter; and they be enjoined from violating Plouffe's or any other person's rights in foreclosure matters under all of the applicable law, rules, and regulations until they fully comply with them.

> 123.    Plouffe requests that he be awarded any attorney's fees, costs, and expenses associated with this cause of action and any other relief the jury/Court deems just, fair, and proper.

(Doc. No.16 ¶¶ 121–123.)

Mr. Plouffe's damages claims are vague and conclusory, and he does not address causation at all. Further, equitable relief is not appropriate here; RESPA articulates the relief it provides and no further relief is justified.

In his response to the defendants' motion for summary judgment, Mr. Plouffe again addresses damages: "[O]ne of the damages that Plouffe has suffered is the lack of a properly evaluated application for modification/forbearance, which he should receive. Further, Plouffe has suffered the expense and stress of having to

try and obtain compliance with the law by the Defendants." (Doc. No. 56, at 9.) These statements are no less conclusory or more specific than the deficient claims in Mr. Plouffe's amended complaint. In conclusion, Mr. Plouffe has failed to properly allege, or provide evidence of, actual damages caused by the defendants' failure to respond to his requests for information.

While actual damages may encompass loss such as "time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence," there is no proof, and not even a specific allegation, of such loss here. See Wilson, 48 F. Supp. 3d at 799. Similarly, while Benner contemplates RESPA damages such as "mental and emotional suffering," a plaintiff must show "demonstrable emotional distress" beyond mere "conclusory statements." See Benner, 917 F. Supp. 2d at 365; McLean, 398 Fed. App'x. at 471. Mr. Plouffe has not shown that here.

Here, the record does not provide any proof at all that Mr. Plouffe suffered actual damages. Mr. Plouffe was not employed during the relevant period of time (Doc. No. 55-3 ¶ 3); he has neither specifically stated nor provided evidence of any relevant expenses regarding his communications with his mortgage servicer or this litigation; and he is a former attorney representing himself in this matter (Id. ¶ 4).

By the time he initiated this case, Mr. Plouffe had already defaulted on his mortgage, received a HEMAP mortgage from PHFA in 2011 (Doc. No. 55, Ex.

D), defaulted again, received a mortgage modification from M & T Bank in 2014 (Id. Ex. A at Ex. "E"), and defaulted once again. His April 30, 2015 letter to Bayview reflects that his only income during the relevant time period was $194 per month in food stamps, while his monthly expenses totaled $2,334.00. (Id. Ex. AG.)

While Mr. Plouffe's circumstances have been undeniably difficult and frustrating, a reasonable jury could not find, based on the record, that Mr. Plouffe suffered actual damages caused by the defendants' actions. Therefore, I find that summary judgment in the defendants' favor is proper on claims 11 and 12.

### 2. Claim 13

Mr. Plouffe claims that Bayview and Mr. Collins violated section 1024.37 by allegedly "forcing" him to purchase insurance. Section 1024.37 does not prohibit a mortgage provider from requiring insurance. To protect consumers, it lists process requirements that must be met "before charging borrower for force-placed insurance." §1024.37. Mr. Plouffe's allegation is vague and conclusory. He has neither alleged nor provided any evidence that the defendants violated any of the process requirements enumerated in section 1024.37. Therefore, I find that summary judgment in the defendants' favor is proper as to claim 13.

### 3. Claim 14

Mr. Plouffe brings claim 14 under section 1024.38 of Regulation X. Section

1024.38 requires mortgage servicers to "maintain policies and procedures" designed to achieve enumerated consumer protection objectives, and it sets certain standards for the storage of documents, files, and communications.

Critically, it does not provide a private right of action. The CFPB's interpretations of Regulation X explicitly state that government regulators enforce section 1024.38, and that the provision does not provide a private right of action. 78 Fed. Reg. at 10,697–98 (Feb. 14, 2013). Further, courts have consistently found that there is no private right of action under section 1024.38.[30] See, e.g., Joussett, 2016 WL 5848845, at *5; In Re: Andre G. Wiggins, No. 12-26993, 2016 WL 7115864, at *4 (Bankr. D.N.J. Dec. 6, 2016). Because there is no private right of action under section 1024.38, I will grant summary judgment in the defendants' favor.

### 4. Claim 15

Mr. Plouffe claims that Bayview and Mr. Collins failed to provide him with "reasonable dates to submit documents" and failed to evaluate his eligibility for forbearance, in violation of Regulation X section 1024.41.

Regarding Mr. Plouffe's claim that he was not given reasonable deadlines by which to submit documentation, summary judgment is appropriate because Mr. Plouffe admitted in his objections to the defendants' statement of material facts,

---

[30] Mr. Plouffe argues that he can bring action under section 1024.38 because he also brought suit as a private attorney general. This argument is vague and unavailing.

that he had misunderstood the dates that he initially deemed unfair—and he has not provided evidence of any other allegedly unreasonable deadlines. (Doc. No. 57 ¶ 20 ("Plouffe acknowledges his error in that he misread the date . . .").)

This leaves the remaining issue of whether the defendants were obligated to evaluate the plaintiff for forbearance under section 1024.41. As the defendants argue, the plain language of section 1024.41 states that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option"—including forbearance. (Doc. No. 55-2, at 13; <u>see also</u> § 1024.41(a).)

Mr. Plouffe calls this argument "smoke in mirrors" and argues that the defendants "did not <u>evaluate</u> Plouffe for a forbearance, which he requested multiple times, and which is required by law." (Doc. No. 56, at 6.) Mr. Plouffe cites sections 1024.41(c)(2) and 1024.38 as setting forth the law requiring the defendants to evaluate him for forbearance. As the defendants argue, nothing in section 1024.41 imposes a duty on the defendants to provide Mr. Plouffe with, or evaluate him for, the loss mitigation option of forbearance.

Further, section 1024.38 is not applicable or relevant here. It requires mortgage servicers to "maintain policies and procedures" designed to achieve certain objectives and makes no mention of forbearance, and, as previously noted, it does not provide a private right of action. § 1024.38; <u>Joussett</u>, 2016 WL

5848845, at *5. A reasonable jury could not find in Mr. Plouffe's favor on claim 15. Therefore, summary judgment in the defendants' favor is proper.

### 5. Claim 16

Mr. Plouffe brings claim 16 under section 1024.7. However, this appears to be a typo because Regulation X does not contain a section "1024.7." To the extent Mr. Plouffe meant to bring this claim under 1024.37, which lists process requirements that must be met "before charging borrower for force-placed insurance," my analysis of claim 13 applies, and I will grant summary judgment in the defendants' favor. To the extent Mr. Plouffe meant to bring this claim under 1024.36 because it involves a request for information, my analysis of claims 11 and 12 applies, and I will grant summary judgment in the defendants' favor because Mr. Plouffe has not provided any evidence of actual damages.

### 6. Claim 17

This claim alleges that the defendants violated RESPA when they did not respond to Mr. Plouffe in writing and instead communicated by phone. Mr. Plouffe brings this claim under "RESPA and Regulation which requires written responses." He fails to note an applicable section of the statute or Regulation X, and I cannot pinpoint one either. Therefore, because there is no genuine issue of material fact in claim 17, I will grant summary judgment in the defendants' favor.

Given the above analysis, summary judgment in the defendants' favor is appropriate on all of the plaintiff's claims.

An appropriate order follows.